712 S.E.2d 488

**LAWYER DISCIPLINARY BOARD, Petitioner**

v.

**John A. GRAFTON, a member of the West Virginia State Bar, Respondent.**

**Nos. 35283, 11–0480.**

Supreme Court of Appeals of West Virginia.

Submitted May 25, 2011.

Decided June 22, 2011.

827, 833 (1995) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim ...." (citation omitted)).

582

Jessica H. Donahue, Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

John A. Grafton, Grafton Law Office, Winfield, WV.

McHUGH, Justice:

This lawyer disciplinary proceeding against John A. Grafton (hereinafter "Mr. Grafton") originated in the Statement of

Charges issued against Mr. Grafton by the Lawyer Disciplinary Board's (hereinafter "Board") Investigative Panel, filed with this Court by the Office of Disciplinary Counsel (hereinafter "ODC") on October 23, 2009.[1] Following an evidentiary hearing on February 23, 2010, the Board's Hearing Panel Subcommittee (hereinafter "HPS") found that the charges were supported by the evidence and reflected Mr. Grafton violated several Rules of Professional Conduct. As a result, the HPS recommended in its October 27, 2010, Report that Mr. Grafton's license to practice law be suspended for one year, in addition to other sanctions. By order dated January 13, 2011, this Court did not concur with the HPS recommendations and instead directed that the matter be scheduled for oral argument.

Thereafter, the ODC filed a second petition on March 17, 2011, seeking the immediate suspension of Mr. Grafton's license to practice law pursuant to Rule 3.27[2] of the Rules of Lawyer Disciplinary Procedure governing extraordinary proceedings.[3] The petition alleged that Mr. Grafton had effectively abandoned his clients and his law practice, posing a substantial threat of irreparable harm to his clients and the public. The ODC further requested that an attorney be appointed to serve as trustee to inventory Mr. Grafton's files pursuant to Rule 3.27(c) and Rule 3.29[4]

1. Case No. 35283.

2. Rule 3.27 of the disciplinary rules provides:

(a) Upon receipt of sufficient evidence demonstrating that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public, the Office of Disciplinary Counsel shall conduct an immediate investigation.

(b) Upon completion of such investigation, the Office of Disciplinary Counsel shall promptly file a report with the Supreme Court of Appeals indicating whether, in the opinion of Disciplinary Counsel, the lawyer's commission of a violation of the Rules of Professional Conduct or disability poses a substantial threat of irreparable harm to the public. The Office of Disciplinary Counsel shall attempt to provide reasonable notice to the lawyer prior to the filing of this report.

(c) Upon receipt of this report, the Supreme Court, upon determining the existence of good cause, shall provide notice of the charges to the lawyer with the right to a hearing in not less than thirty days before the Court. The

Supreme Court may appoint a trustee to protect the interest of the lawyer's clients during the pendency of these proceedings. After such hearing, the Supreme Court may temporarily suspend the lawyer or may order such other action as it deems appropriate until underlying disciplinary proceedings before the Lawyer Disciplinary Board have been completed.

(d) Unless otherwise provided, interim suspension of a lawyer pursuant to this rule shall take effect immediately upon entry of the order by the Supreme Court. A hearing on formal charges against the suspended lawyer shall be conducted by a Hearing Panel Subcommittee, unless continued for good cause shown, within ninety days after the effective date of suspension.

3. Case No. 11–0480.

4. Rule 3.29 of the disciplinary rules, captioned "Appointment of counsel to protect clients' interests," reads as follows:

When a lawyer has disappeared, died, or has abandoned his or her law office or practice or

of the Rules of Lawyer Disciplinary Procedure. By order made and entered on March 23, 2011, this Court granted the petition only as to the appointment of a trustee.

A trustee was appointed by the Circuit Court of Putnam County on that same date. When Mr. Grafton failed to provide his files to the trustee, the ODC filed a motion on April 12, 2011, requesting that this Court reconsider its decision not to immediately suspend Mr. Grafton's law license.[5] The ODC also requested that a rule to show cause issue as to why Mr. Grafton should not be found in contempt of this Court's March 23, 2011, order directing appointment of a trustee to secure and inventory the client files. By orders entered on May 12, 2011, this Court: (1) ordered suspension of Mr. Grafton's license to practice law pending the resolution of the underlying disciplinary complaint; and (2) issued a rule to show cause why Mr. Grafton should not be held in contempt for noncompliance with the March 23, 2011, order of this Court and the resulting circuit court order appointing a trustee.

For the reasons discussed below, we accept the recommendations and conclusions of law presented by the Board, but reject the recommended one-year period for license suspension. Instead, we impose a two-year license suspension in addition to the other sanctions recommended by the HPS.

## I. Factual Background

Mr. Grafton was admitted to practice law in the State of West Virginia on October 2, 1995. His law practice is based in Winfield, West Virginia. Mr. Grafton had been the subject of a prior disciplinary proceeding initiated in June 2006, for which he was disciplined for failing to communicate with clients and to respond to the ODC. As reflected in this Court's order of November 20, 2007, the prior proceeding resulted in a reprimand and imposition of certain additional requirements.[6]

The Report of the Hearing Panel Subcommittee contained the following findings of facts regarding the present disciplinary action. Cheryl Ann Briscoe (hereinafter "Ms. Briscoe") retained Mr. Grafton to represent her in a personal injury suit against an individual and her insurance company. A complaint was filed with regard to this matter in the circuit court in October 2004. During the course of this litigation, Mr. Grafton missed or ignored multiple deadlines, including: not filing either fact witness or expert witness disclosures; failing to timely respond to discovery requests,[7] not filing responses to the defendant's request for admissions; causing the independent medical examination deadline to be continued because of the unduly late response to discovery; and not submitting a response to the defendant's motion for summary judgment.

---

has been suspended or disbarred and there is evidence that the lawyer has not complied with Rule 3.28, and no partner, executor, or other responsible party capable of conducting the lawyer's affairs is known to exist, the Supreme Court of Appeals, upon written request by Disciplinary Counsel, may authorize the chief judge in the circuit in which the lawyer maintained his or her practice, to appoint a lawyer or lawyers to inventory the files of the disappeared, deceased, abandoning, suspended, or disbarred lawyer and to take such action as seems indicated to protect the interests of the lawyer and the lawyer's clients. Any lawyer so appointed shall not be permitted to disclose any information contained in any files so inventoried without the consent of the client to whom such file relates, except as necessary to carry out the order of the court which appointed the lawyer to make such an inventory.

**5.** In support of its motion to reconsider, the ODC represented that it had received a letter from the trustee which stated that he attempted to obtain

the client files from Mr. Grafton's law office which was locked and that Mr. Grafton had been evicted from the premises. The trustee's letter related that as he was leaving the law office he had received a phone call from Mr. Grafton saying he would not voluntarily release the client files, and asserting that the trustee had no right to the open or closed client files because Mr. Grafton "has not been disbarred, his license aren't [sic] annulled, nor is he dead."

**6.** The specific requirements were that Mr. Grafton: participate in a prescribed plan of supervised practice for one year; complete additional hours of continuing legal education specific to law office management, substance abuse or elimination of bias in the legal profession; and pay the costs of the disciplinary proceeding.

**7.** Defense counsel filed a motion to compel discovery; Mr. Grafton ultimately filed a discovery response seven months beyond the deadline set by the trial court.

After the aforementioned deadlines were missed, Mr. Grafton was involved in a motor vehicle accident from which he suffered serious injuries that ultimately required amputation of his left foot in March 2007. Since oral argument on the defense motion for summary judgment was scheduled during the time Mr. Grafton was recovering from the accident, he asked another attorney to assist with Ms. Briscoe's case.

The hearing on the summary judgment motion was held on January 12, 2007. At its conclusion, the parties were instructed to file proposed findings of facts and conclusions of law. The attorney acting in Mr. Grafton's stead informed Mr. Grafton about the court's instruction. In response, Mr. Grafton provided the trial court with a proposed order denying the summary judgment motion on February 2, 2007. The defense motion for summary judgment was granted and Ms. Briscoe's case was dismissed by order signed on February 12, 2007. The order reflected that the motion was granted partly because Ms. Briscoe failed to respond to requests for admissions.

Orders prepared by Mr. Grafton extending the time to appeal the summary judgment were entered by the lower court on June 14, 2007, July 13, 2007, and August 6, 2007. The reason Mr. Grafton gave the lower court for needing the filing extensions was medical complications he experienced from the car accident. The last date on which Mr. Grafton was given to file an appeal was August 17, 2007.

Mr. Grafton filed a petition for appeal in the office of the circuit court clerk on August 17, 2007. The petition was filed without a designation of record, a docketing statement, the requisite number of copies or processing fee. The circuit court clerk sent Mr. Grafton a certified letter the following month detailing the deficiencies and informing him that the appeal could not be processed until all the requirements were met. An agent of Mr. Grafton signed the certified letter receipt on October 9, 2007. No further action

was taken by Mr. Grafton regarding the appeal.

Ms. Briscoe regularly checked on the status of her appeal with Mr. Grafton's law office from October 2007 to January 2009. During this sixteen-month period, Ms. Briscoe was informed by someone at the Grafton law office that the appeal was pending. Ms. Briscoe repeatedly tried to speak directly with Mr. Grafton, but he did not return her phone calls and he did not appear for appointments she scheduled with his office.

The first time that Ms. Briscoe learned that the appeal in her case had not been perfected was during a January 2009 phone call with the circuit court clerk's office. She filed her complaint with the ODC on March 17, 2009.

The ODC submitted the complaint to Mr. Grafton; he failed to file a response, even though the ODC granted several extensions to submission dates based upon assurances that a response was forthcoming. He also failed to comply with a subpoena compelling him to appear at the ODC with his complete file pertaining to Ms. Briscoe's suit for the purposes of making a sworn statement regarding the case. However, Mr. Grafton did appear before the HPS at the February 23, 2010, hearing where he expressed remorse.

The formal Statement of Charges against Mr. Grafton based upon the above events included: failure to act with reasonable diligence, failure to abide by court orders and to preserve a client's appellate rights, inadequate communication with a client, deception of a client, and failure to respond or comply with the ODC regarding a disciplinary matter. The HPS found that the evidence supported these charges which represented the following violations of the West Virginia Rules of Professional Conduct (hereinafter "Rules" or "Rule"). Mr. Grafton's lack of diligence in fully and properly responding to discovery requests, complying with the trial court's scheduling order, and preparing, filing and perfecting an appeal in the Briscoe case represented violations of Rules 1.3,[8] 3.2,[9] and 3.4.[10] Violations of Rule

---

8. Rule 1.3 provides as follows: "A lawyer shall act with reasonable diligence and promptness in representing a client."

9. Rule 3.2 states: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

8.4(c) and (d) [11] were found in Mr. Grafton being dishonest with his client about failing to properly file an appeal of the dismissal of her civil action—and that the dismissal occurred because he had neglected to comply with discovery and scheduling restrictions. Mr. Grafton's repeated failure to communicate with his client and keep her informed of the status of her case also was found to constitute violation of Rule 1.4(a) and (b).[12] Finally, for his failing to respond or comply with legal process with regard to the Board's investigation of Ms. Briscoe's lawyer disciplinary complaint, Mr. Grafton was found to be in violation of Rule 8.1.[13]

In determining the proper punishment for these violations, the HPS noted as mitigating factors that Mr. Grafton expressed remorse at the HPS hearing and that he had sustained severe injuries including the loss of a foot in a car wreck. The HPS simultaneously noted that Mr. Grafton's problems involving professional conduct issues both pre-dated and post-dated the period in which he was recovering from a physical disability. The aggravating factors found by the HPS included that Mr. Grafton exhibited a pattern and practice of misconduct in his dealing with clients as well as the ODC. Mr. Grafton's actions involving dishonesty, deceit and misrepresentation were found to be most troubling. The HPS took note as well of the lack of effect the prior disciplinary action for similar transgressions had on Mr. Grafton's professional behavior. The HPS also recognized that Mr. Grafton had been practicing law since 1995 and found his behavior incongruent with his years of experience in the profession.

Finding that the evidence established clear and convincing proof that Mr. Grafton violated the West Virginia Rules of Professional Conduct, the HPS determined that the following six sanctions were appropriate. The HPS recommended that Mr. Grafton: (1) be suspended from the practice of law for one year; (2) be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure; (3) be ordered to undergo a psychiatric/psychological evaluation and to follow any treatment protocol recommended by the evaluating psychiatrist/psychologist prior to reinstatement; (4) be supervised in the practice of law for two years beginning at the point of reinstatement; (5) be required to complete nine additional hours of continuing legal education in ethics, specifically in office management, before reinstatement occurs; and (6) be ordered to reimburse the Board for the costs of the disciplinary proceedings. Mr. Grafton did not voice objection to the HPS Report.

This Court did not agree with the HPS recommendations and ordered the parties to submit briefs. The ODC filed a brief in which it endorsed the HPS Report and recommended sanctions. Mr. Grafton did not file a responsive brief.[14]

---

**10.** The relevant portions of Rule 3.4 relied upon by the HPS are as follows:

A lawyer shall not:
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party[.]

**11.** The pertinent parts of Rule 8.4 are:

It is professional misconduct for a lawyer to
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

**12.** Rule 1.4 states:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**13.** Relevant language of Rule 8.1 provides:

[A] lawyer in connection with ... in connection with a disciplinary matter, shall not:
(b) ... knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

**14.** The only document Mr. Grafton filed with regard to this disciplinary action was a response to the motions filed in Case. No. 11–0480 seeking reconsideration of the immediate suspension of Mr. Grafton's law license and for contempt. The merits of the complaint filed in the underlying proceeding were not addressed by Mr. Grafton in the submitted material or during oral argument.

## II. Standard of Review

We approach the review of lawyer disciplinary cases according to the following standard set forth in syllabus point three of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994):

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

This standard is consistent with the authority vested in this Court with regard to the ultimate disposition of legal ethics matters in this State. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

With these general standards in mind, we now proceed with our consideration of the report and recommendations of the HPS.

## III. Discussion

The ODC maintains that the HPS properly considered the evidence and made appropriate disciplinary recommendations in light of the little evidence Mr. Grafton offered in mitigation. The ODC further observed that given Mr. Grafton's patterns of misconduct, multiple offenses, and prior history of discipline that the HPS could have recommended more severe sanctions.

Proceeding with our analysis of this case, we first examine whether an adequate factual basis is established. Under our disciplinary rules, the ODC must prove its case by clear and convincing evidence. Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence."). However, in keeping with our established standard of review, the evidentiary findings of the HPS are afforded substantial deference. Syl. Pt. 3, *McCorkle*. Mr. Grafton did not object to the findings or submit a brief with regard to his conduct in the Briscoe matter, and our review reveals no basis to disturb the findings of the HPS with regard to the facts or the particular violations of the Rules of Professional Conduct implicated in those facts.

As to the sanctions recommended by the HPS for Mr. Grafton's misconduct, the factors this Court typically considers in imposing appropriate sanctions include:

(1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and, (4) the existence of any aggravating or mitigating factors.

Rule 3.16, Rules of Lawyer Disciplinary Proc.; Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

It is apparent from the facts before us that Mr. Grafton intentionally and repeatedly violated duties to his client, the public, the legal system, and the legal profession. Ms. Briscoe was most obviously damaged when, as a result of Mr. Grafton's lack of diligence and deceit, her suit was dismissed. Any opportunity Ms. Briscoe may have had to resolve her dispute and to recover damages for her personal injury was completely lost when Mr. Grafton failed in perfecting an appeal of the summary judgment. We next consider mitigating and aggravating factors.

We addressed mitigating factors in *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003), as being "any considerations or factors that may justify a reduction in the degree of discipline to

be imposed." *Id.* at Syl. Pt. 2. We went on to explain in syllabus point three of *Scott* that:

Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Thereafter in *Scott* we held in syllabus point four that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed."

Applying these factors to the present case, we acknowledge the mitigating factor of Mr. Grafton's serious accident in 2006 and the complications from the injuries he sustained in the accident which ultimately resulted in the amputation of his left foot in March 2007. We also understand that Mr. Grafton expressed remorse during the HPS hearing. On the other hand, Mr. Grafton is not a newcomer to the practice or law, having over fifteen years of experience in the profession. Furthermore, he has previously been sanctioned for the same type of misconduct. Mr. Grafton has continued in a pattern and practice of repeatedly failing to communicate with and for his clients, and not responding to requests of the ODC. Additionally, it is apparent in the present case that Mr. Grafton not only failed to communicate, he also deceived his client by allowing her to believe that he was acting diligently and an appeal had been perfected in her case.

██ Also pending before us is a motion for contempt related to Mr. Grafton's failure to obey this Court's order regarding the appointment of a trustee to perform an inventory of Mr. Grafton's client files. " 'When this Court acts within its jurisdiction, its orders shall be promptly obeyed, or contempt is a proper sanction.' Syl. Pt. 1, *United Mine Workers of America v. Faerber*, 179 W.Va. 73, 365 S.E.2d 353 (1986)." Syl. Pt. 1, *Office of Lawyer Disciplinary Counsel v. Cunningham*, 200 W.Va. 339, 489 S.E.2d 496 (1997).

██ Our order of March 23, 2011, authorized the appointment of "an attorney to inventory the respondent's (Mr. Grafton's) files and to take such action as seems indicated to protect the interests of the respondent and his clients during the pendency of these proceedings." [15] According to an April 11, 2011, letter written by the trustee regarding the inventory and addressed and faxed to the ODC, Mr. Grafton had refused to release the client files. The trustee said that on April 11 he went to obtain both open and closed files from Mr. Grafton's office with the assistance of the landlord. While at the office, Mr. Grafton called and informed the trustee that he had not been disbarred, his license wasn't annulled and he wasn't dead, so the trustee had no right to any of his client files. Mr. Grafton also informed the trustee that the open files were in his possession and not inside the law office. The trustee stated in the letter:

I don't believe that I have been assigned the task of "physically" obtaining these files. I am willing to follow all orders of the Supreme Court; however, if those files are to be forcibly removed from Mr. Grafton's person or office, I ask that an Order be entered directing law enforcement to do so and transport the files to my office.

The trustee also wrote a letter to Mr. Grafton dated April 21, 2011, in which he stated that he met with Mr. Grafton and reviewed the active files on March 25, 2011. This occurred before the trustee was contacted by the ODC on March 29, 2011, regarding his duties. When the trustee spoke with the ODC, he was referred to their Handbook for Court–Appointed Trustees (hereinafter

---

**15.** The circuit court's order of appointment contained the same language.

"Handbook") for trustees appointed under Rule 3.27(c) or Rule 3.29 of the Rules of Lawyer Disciplinary Procedure. The trustee indicated in the letter that his interpretation of what an inventory of the client files entailed was different from the responsibilities detailed in the Handbook.[16]

Mr. Grafton explained during oral argument and in the brief he filed in response to the ODC motion that he believed he complied with this Court's order by reviewing all of his open files with the trustee.[17] Mr. Grafton indicated that he was genuinely concerned that if he gave the files to the trustee, the trustee would follow the procedures set forth in the Handbook. These procedures require a trustee to contact current clients of an attorney whose license has been suspended regarding the need to obtain new counsel due to the suspension. *See* Handbook, Part III. C. Since his license had not been suspended, Mr. Grafton did not believe such contact would be appropriate.[18]

Considering all of the circumstances, we cannot say that Mr. Grafton's actions amounted to contempt, but they are further evidence of seriously poor judgment and conduct unbecoming a lawyer. Mr. Grafton admitted during oral argument that he did not contact the ODC to explain his fears or seek clarification as to how the procedures in the Handbook would apply to his situation. Instead, he unilaterally decided not to comply with an order of this Court. Such behavior further demonstrates Mr. Grafton's lack of appreciation of his duties to the legal system and the legal profession, as well as an understanding of the role of the ODC and disciplinary matters. We are now left to consider whether this conduct occurring after the HPS report was finalized should be treated as an aggravating factor which may be used to enhance the sanction HPS has recommended.

Ultimately, decisions about disciplining lawyers rests with this Court. Syl. Pt. 5, in part, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). As we elaborated in Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989):

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession. (citation omitted)

Whether an ethical violation relevant to a disciplinary case before this Court occurs before or after the HPS has acted does not change the multi-faceted responsibility this Court has to devise a proper sanction for the advancement of the legal system and protection of the public. To avoid allowing relevant misconduct to go unchecked in such situations, such behavior shall be considered an aggravating factor upon which this Court may rely to impose additional sanctions over those recommended. As a result we hold that a person named in a disciplinary proceeding before this Court who, after the Hearing Panel Subcommittee has filed its Report with recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhance-

---

16. It remains unclear how and when the trustee obtained a copy of the Handbook. To avoid confusion in the future, trial judges should note in their orders appointing trustees in disciplinary matters that, in addition to any specific duties set forth in the order, the basic responsibilities and duties of such trustees are outlined in the Office of Disciplinary Counsel Handbook for Court–Appointed Trustees. A copy of the order of appointment should be sent to the ODC so that a copy of the Handbook may be supplied to the newly appointed trustee in a timely fashion. The order in the present case did not specify that the clerk provide a copy of the order to the ODC.

17. Mr. Grafton brought only the open files to the trustee's office. The closed files were in the locked law office from which Mr. Grafton had been evicted.

18. The files were turned over to the trustee after Mr. Grafton was temporarily suspended pursuant to a May 12, 2011, order of this Court.

ment of the recommended sanctions of the Hearing Panel Subcommittee.

 Given the facts now before us, we view Mr. Grafton's subsequent misconduct directly related to the Briscoe complaint, involving the same types of problems with communication and respect for the legal system, as being a further violation of Rule 8.4(d) of the Rules of Professional Conduct.[19] Moreover, it is an additional aggravating factor which warrants an increase in sanction. In light of the overall misconduct revealed through this proceeding, we conclude that the one-year license suspension recommended by the HPS is inadequate. The public, the profession and the legal system of this State will be better served with the imposition of a two-year license suspension.

## IV. Conclusion

For the foregoing reasons, the recommendations in the October 27, 2010, Report of the HPS are adopted as modified, imposing the following discipline on Mr. Grafton as respondent to this proceeding:

(1) That respondent be suspended from the practice of law for a period of two years;

(2) That respondent be required to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;

(3) That, prior to reinstatement, respondent undergo a psychiatric/psychological evaluation and follow any treatment protocol recommended by the evaluating psychiatrist/psychologist;

(4) That, upon reinstatement, respondent's practice be supervised for a period of two years;

(5) That respondent complete nine hours of continuing legal education in ethics, specifically in office management, in addition to such ethics hours as he is otherwise required to complete to maintain an active license to practice, with the additional nine hours completed before reinstatement occurs; and

(6) That respondent reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law license suspended and other sanctions imposed.