IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 17-0007

_____

FILED

February 27, 2019

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

KOURTNEY A. RYAN,
A Suspended Member of the West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceeding

LAW LICENSE ANNULLED AND OTHER SANCTIONS IMPOSED

_____

Submitted: January 15, 2019
Filed: February 27, 2019

Rachael L. Fletcher Cipoletti, Esq.          Kourtney A. Ryan
Chief Lawyer Disciplinary Counsel            Palm Bay, Florida
Office of Lawyer Disciplinary Counsel         Pro Se
Charleston, West Virginia
Counsel for the Petitioner

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus Point 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Comm. on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

3.      "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 7, in part, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

i

4. "Rule 3.16 of the *West Virginia Rules of Lawyer Disciplinary Procedure* enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus Point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

5. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus Point 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

7. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make

ii

restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus Point 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

8.      "A person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee." Syllabus Point 7, *Lawyer Disciplinary Bd. v. Grafton*, 227 W.Va. 579, 712 S.E.2d 488 (2011).

Justice Armstead:

This is a lawyer disciplinary proceeding brought against Kourtney A. Ryan ("Mr. Ryan") by the Lawyer Disciplinary Board ("LDB"). A Hearing Panel Subcommittee ("HPS") of the LDB determined that Mr. Ryan committed multiple violations of the West Virginia Rules of Professional Conduct. It recommended a number of sanctions be imposed against Mr. Ryan, including the indefinite suspension of his law license. The Office of Disciplinary Counsel ("ODC") recommends that Mr. Ryan's law license be annulled.

Upon review, this Court finds that clear and convincing evidence exists to support the HPS's determination that Mr. Ryan committed multiple violations of the West Virginia Rules of Professional Conduct. Based upon the designated record and pertinent authorities, we agree with the ODC's recommendation and order that Mr. Ryan's law license be annulled.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The events relevant to the instant proceeding occurred in 2014 and 2015. During that time, Mr. Ryan was a lawyer practicing in Buckhannon, West Virginia.[1] He was admitted to the West Virginia State Bar in May 1988. As such, Mr. Ryan is subject to the disciplinary jurisdiction of this Court.

---

[1] Mr. Ryan's law license is currently suspended because he has not paid his West Virginia State Bar ("State Bar") membership fees. The State Bar lists his current address as Palm Bay, Florida.

1

Mr. Ryan served as the guardian ad litem ("GAL") for two children, P.C. and L.C.,[2] in two abuse and neglect matters in Upshur County. Permanent legal guardianship of the two children was granted to their maternal great uncle and aunt, T.C. and B.C. ("Mr. and Mrs. C."), in January 2014. Thereafter, visitation issues arose with the children's paternal grandparents. Due to these visitation issues, Mr. and Mrs. C. decided to retain an attorney. They contacted Mr. Ryan.

On June 16, 2014, Mr. Ryan met with Mr. and Mrs. C. at a restaurant in Buckhannon, West Virginia. Despite the fact that he was still serving as the GAL in the abuse and neglect matters, Mr. Ryan agreed to represent Mr. and Mrs. C. and directed them to pay him a $2,500 retainer fee. Mr. Ryan gave Mr. and Mrs. C. a receipt for the retainer fee that indicated it was for a case "involving child custody and [a] visitation dispute." Mr. Ryan did not discuss any potential conflict of interest with Mr. and Mrs. C., nor did Mr. and Mrs. C. give informed consent to any potential conflict of interest.

On September 30, 2014, D.C., the paternal grandmother of P.C. and L.C. ("paternal grandmother"), filed a petition with the circuit court asserting that Mr. and Mrs. C. were in contempt of the court's visitation order. A hearing regarding the visitation issue was scheduled for November 14, 2014. Mr. and Mrs. C. were sent a notice of this hearing.

---

[2] We follow our traditional practice in cases involving minor children and use initials rather than surnames to identify them. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n.1, 387 S.E.2d 537, 538 n.1 (1989).

Mr. Ryan, in his capacity as the GAL for the two children, was also sent notice of this hearing by the circuit court.

During the November 14, 2014, hearing, Mr. Ryan sat at the table reserved for the GAL while Mr. and Mrs. C. sat at a separate table. Mr. Ryan failed to disclose to the court that he had taken a retainer fee from Mr. and Mrs. C. The order entered by the court following this hearing indicated that Mr. Ryan was the GAL and that Mr. and Mrs. C. were pro se.[3]

In addition to Mr. and Mrs. C.'s concerns regarding Mr. Ryan's failure to represent their interests at the November hearing, they were also alarmed at Mr. Ryan's statement to the circuit court that he had met with the children in preparation for the November 2014 hearing. Mr. and Mrs. C. knew that Mr. Ryan had not met with the children prior to the hearing and that his statement to the circuit court was false.

An amended petition for contempt was filed by the paternal grandmother on December 23, 2014. Thereafter, Mr. and Mrs. C. obtained a new attorney, Daya Masada Wright. After discovering that Mr. Ryan had taken money from Mr. and Mrs. C. while he was serving as the GAL, Ms. Wright reported Mr. Ryan to the ODC. Ms. Wright's letter to the ODC provides:

> At the November 14, 2014, [hearing], [Mr. and Mrs. C.], who were unaware of the conflict of interest, were unpleasantly surprised to realize that Mr. Ryan was not representing them individually. Rather, Mr. Ryan represented to the Court that he was Guardian ad Litem for the children.

---

[3] The court's order did not alter its previous visitation order. Instead, the order encouraged the parties to ensure reasonable visitation.

And he failed to disclose to the Court that he had been privately paid by [Mr. and Mrs. C.] for his appearance. . . .

I was hired to represent [Mr. and Mrs. C.] on January 12, 2015. I discovered the receipt for monies received in the collection of documents that I received from them at that time. . . .

Mr. Ryan did not discuss the potential conflict of interest with [Mr. and Mrs. C.]. He did not obtain their informed consent in writing. P.C. and L.C. are minors and incapable of providing informed consent in writing.

[Mr. and Mrs. C.] have never received any billing information from Mr. Ryan regarding the legal services performed by him on their behalf or the status of any remaining monies held by him.

Mr. Ryan filed a verified response to Ms. Wright's complaint on February 13, 2015. He stated that Mr. and Mrs. C. contacted him regarding visitation issues they were experiencing with the children's father and paternal grandmother. According to Mr. Ryan, he told Mr. and Mrs. C. that "I could not represent them because that would create a conflict of interest. . . . [Mr. and Mrs. C.] still requested that I assist them regarding the recurring issues and problems that were occurring regarding visitation." Further, Mr. Ryan stated that all of the advice he gave to Mr. and Mrs. C. was "in the best interests of the children" and that his actions were never misleading or deceptive. Finally, Mr. Ryan stated that he was sending Ms. Wright a check for $2,500 made payable to Mr. and Mrs. C.

On February 17, 2015, Mr. Ryan informed the circuit court by letter that he should be relieved and a new GAL should be appointed "based upon the existence of a conflict of interest." The circuit court appointed a new GAL on February 27, 2015, and

4

the case eventually concluded with Mr. C. being awarded permanent legal guardianship of the children.[4]

On April 23, 2015, the paternal grandmother filed a complaint with the ODC against Mr. Ryan. She alleged that Mr. Ryan "took money to represent [Mr. and Mrs. C.] without disclosure to the court or to the parties." The paternal grandmother asserted that the GAL should be neutral and advocate for the best interests of the children. However, that did not occur, according to the paternal grandmother, because Mr. Ryan accepted money from Mr. and Mrs. C. and therefore had a conflict of interest.

Based on the two complaints filed against Mr. Ryan, the LDB issued a statement of charges against him on January 3, 2017. Mr. Ryan did not file an answer to these charges. On May 4, 2017, Mr. Ryan informed the HPS and the ODC that he had a serious medical condition that was impairing his ability to participate in the disciplinary proceedings. He stated that he would provide the HPS and ODC with a letter from a medical care provider to support this claim. Mr. Ryan also informed the HPS and the ODC that he was no longer practicing law and was living with his daughter in North Carolina. Further, Mr. Ryan stated that if the ODC wanted to impose sanctions on him, including the suspension of his law license, he would not object. During a status conference on May 11, 2017, Mr. Ryan appeared telephonically and stated that he had relocated to Florida and

---

[4] Mrs. C. died three days before the final hearing in the guardianship case.

continued to seek treatment for his medical condition. At the conclusion of this status conference, Mr. Ryan agreed to provide the ODC with an update on his medical condition.

After the May 11, 2017, status conference, the ODC made a number of attempts to contact Mr. Ryan.[5] Despite multiple requests from the ODC, Mr. Ryan failed to provide any medical documentation of his condition, failed to respond to any requests from the ODC, and failed to participate in the disciplinary proceedings. The matter proceeded to a hearing before the HPS on October 20, 2017, wherein Ms. Wright and the paternal grandmother testified. Mr. Ryan did not appear at this hearing. Thereafter, on February 22, 2018, the HPS filed its "Recommended Decision . . . and Recommend Sanctions."

The HPS determined that: (1) Mr. Ryan's retention by Mr. and Mrs. C. while he was serving as the GAL was a "non-consentable *per se* conflict of interest in violation of Rule 1.7, Rule 1.16(a)(1), and Rule 8.4(d)" of the West Virginia Rules of Professional Conduct;[6] (2) Mr. Ryan's failure to advise Mr. and Mrs. C. of his conflict of interest and

---

[5] The ODC sent Mr. Ryan a letter on June 2, 2017, requesting an update on his medical condition. On August 23, 2017, the ODC sent Mr. Ryan a letter, an e-mail, and left a "detailed voicemail" providing notification of an August 31, 2017, status conference. The ODC sent additional correspondence to Mr. Ryan on September 11, 2017, and September 13, 2017, providing notice of the pre-hearing in this matter and requesting medical updates on his condition.

[6] This Court approved amendments to the West Virginia Rules of Professional Conduct, effective January 1, 2015. Mr. Ryan's conduct herein occurred both before and after the amendments; the minor modifications to the rules do not affect this case.
Rule 1.7 of the West Virginia Rules of Professional Conduct provides:

his acceptance of a retainer fee from Mr. and Mrs. C. violated Rule 1.4  and Rule 8.4(c);[7]

(3) Mr. Ryan refused to represent the interests of Mr. and Mrs. C. at the November 2014

 (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
        (1) the representation of one client will be directly adverse to another client; or
        (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
        (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
        (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
        (2) the representation is not prohibited by law;
        (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
        (4) each affected client gives informed consent, confirmed in writing.

Rule 1.16(a)(1) provides: "(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct or other law[.]"

Rule 8.4(d) provides: "It is professional misconduct for a lawyer to: (d) Engage in conduct that is prejudicial to the administration of justice."

[7] Rule 1.4 of the West Virginia Rules of Professional Conduct provides:
        (a) A lawyer shall:
        (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
        (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
        (3) keep the client reasonably informed about the status of the matter;
        (4) promptly comply with reasonable requests for information; and

hearing and continued in his capacity as GAL until February 2015, in violation of Rule 1.7,

Rule 1.9[8], and Rule 1.16(a)(1); and (4) during the November 2014 hearing, Mr. Ryan failed

        (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
        (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

        Rule 8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[8] Rule 1.9 of the West Virginia Rules of Professional Conduct provides:
        (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
        (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client,
        (1) whose interests are materially adverse to that person; and
        (2) about whom the lawyer has acquired information protected by Rule 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
        (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
        (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
        (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

to disclose to the circuit court that he had been retained by Mr. and Mrs. C. and he continued to serve as the GAL in violation of Rule 3.3(a)(1),[9] Rule 8.4(c), and Rule 8.4(d).

In considering the punishment to be imposed, the HPS found that Mr. Ryan violated duties to his clients, to the legal system and to the legal profession. Further, the HPS found that Mr. Ryan acted intentionally and knowingly, and that the "potential for real injury to the parties in this case, including the children, and the legal system was enormous." Additionally, the HPS found that four aggravating factors were present: (1) substantial experience in the practice of law; (2) a pattern of misconduct; (3) a failure to participate in the disciplinary proceedings; and (4) misconduct committed during the representation of minor children.

Based on its findings, the HPS recommended that Mr. Ryan (1) be suspended indefinitely from the practice of law; (2) comply with the mandates of Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure regarding the duties of suspended

---

[9] Rule 3.3(a) of the West Virginia Rules of Professional Conduct provides:
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

9

or disbarred lawyers; (3) be barred from petitioning for reinstatement for a minimum of two years; (4) prior to filing a petition for reinstatement pursuant to Rule 3.32, produce a medical opinion from an independent medical examiner indicating that he is fit to engage in the practice of law; and (5) pay the costs of this disciplinary proceeding.

The HPS's recommended disposition was filed with this Court on February 22, 2018. By order entered May 9, 2018, this Court ruled that it did not concur with the recommended disposition and set the matter for argument. After this matter was scheduled for argument, Mr. Ryan failed to file a response to the ODC's brief despite being directed to do so by this Court's scheduling order. The ODC filed a motion asking this Court to consider an additional aggravating factor based on Mr. Ryan's failure to file a brief, arguing that Mr. Ryan violated Rule 3.4(c) of the West Virginia Rules of Professional Conduct, which provides, in pertinent part, "[a] lawyer shall not: . . . (c) knowingly disobey an obligation under the rules of a tribunal[.]" Therefore, the ODC requested that this Court enhance the recommended sanction and order that Mr. Ryan's law license be annulled. Mr. Ryan has not participated in the proceedings before this Court in any manner—in addition to failing to file a brief, Mr. Ryan failed to appear for oral argument before this Court.

## II. STANDARD OF REVIEW

In *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 289, 452 S.E.2d 377, 380 (1994), this Court took the opportunity to "resolve any doubt as to the applicable standard of judicial review" in lawyer disciplinary cases. In Syllabus Point 3 of *McCorkle*, this Court held:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Comm. on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

Rule 3.7 of the West Virginia Rules of Lawyer Disciplinary Procedure provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *See also* Syllabus Point 2, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15. It states:

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the *Rules of Professional Conduct* . . . (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the

11

Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

In devising suitable sanctions for attorney misconduct, we have recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994).

## III. ANALYSIS

The ODC urges this Court to annul Mr. Ryan's law license and to impose the additional sanctions recommended by the HPS. The ODC asserts that these sanctions will not only punish Mr. Ryan, but will also serve as an effective deterrent to other members of the State Bar. Similarly, as noted by the HPS in its recommend decision,

> [i]t is paramount that a message be sent to make it absolutely clear the serious nature of the duties of a [GAL] who must focus on the best interest of their infant clients above the wants and wishes of adults who sometimes compete for custody and/or visitation of such children for their own egos or other reasons which may or may not necessarily be in the best interests of the child.

Our review begins with our recognition that the ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syllabus Point 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). Further, once the HPS makes its factual findings, they are afforded substantial deference.

12

*See* Syllabus Point 3, *McCorkle*, 192 W.Va. 286, 452 S.E.2d 377.  This Court's review of the record reveals clear and convincing evidence that Mr. Ryan violated the rules of professional conduct as determined by the HPS.  It is undisputed that Mr. Ryan (1) accepted a retainer fee from Mr. and Mrs. C. while he was serving as the GAL in the abuse and neglect matters, and (2) failed to inform Mr. and Mrs. C. or the circuit court about his conflict of interest.  Mr. Ryan did not contest the HPS's factual findings during the disciplinary proceedings below, nor has he filed a brief with this Court.

Turning now to the recommended sanctions, we begin by noting that sanctions in lawyer disciplinary cases must be designed to "serve as a deterrent to other attorneys." *McCorkle*, 192 W. Va. at 291, 452 S.E.2d at 382.  As this Court held in Syllabus Point 7 of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998):

> "'In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

In considering the appropriate sanctions to impose, we are guided by the well-settled principle that:

> Rule 3.16 of the *West Virginia Rules of Lawyer Disciplinary Procedure* enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a

13

sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syllabus Point 4, *Jordan*. We now proceed to consider the four factors contained in Rule 3.16.

### 1. Duties Owed to Clients, the Public, the Legal System, or the Profession

First, we consider whether Mr. Ryan violated a duty owed to a client, to the public, to the legal system, or to the profession. The record overwhelmingly demonstrates that Mr. Ryan's actions violated duties to his clients, to the legal system and to the legal profession.

This Court has repeatedly instructed GALs of the full scope of their duties to their infant clients. *See State v. Michael M.*, 202 W.Va. 350, 356 n.11, 504 S.E.2d 177, 183 n.11 (1998) ("We again underscore that guardians *ad litem* have a duty to fully represent the interests of their child wards at all stages of the abuse and/or neglect proceedings, both in the circuit court and on appeal.").[10] Mr. Ryan's acceptance of a $2,500 retainer fee from

---

[10] *See also* Syllabus Point 5, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993) ("Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, W.Va. Code, 49-6-2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem*

Mr. and Mrs. C. while he was serving as GAL to the same two children who were in the custody of Mr. and Mrs. C. and were the children at the center of the abuse and neglect matters created a conflict of interest.

Next, Mr. Ryan's failure to inform the circuit court of his conflict of interest violated multiple duties a lawyer owes to the legal system, including the duties of candor, honesty, diligence, and loyalty. Further, Mr. Ryan's actions violated his duty to maintain the integrity of the legal profession. The paternal grandmother was left with a bad impression of the legal profession based on Mr. Ryan's conduct. She explained that "a [GAL] should be neutral. . . . So he [Mr. Ryan] was, again, siding with, you know, [Mr. and Mrs. C.], took the money from them. So that was wrong."

Additionally, Mr. Ryan violated a duty to the legal system by repeatedly failing to respond to the ODC. Mr. Ryan failed to respond to multiple letters, e-mails, and voicemails the ODC sent him regarding the disciplinary proceedings. He also failed to comply with this Court's order that he file a brief in this matter.

---

shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client. The Guidelines for Guardians *Ad Litem* in Abuse and Neglect cases . . . are in harmony with the applicable provisions of the West Virginia Code, the *West Virginia Rules for Trial Courts of Record*, and the *West Virginia Rules of Professional Conduct*, and provide attorneys who serve as guardians *ad litem* with direction as to their duties in representing the best interests of the children for whom they are appointed.").

**2. Whether the lawyer acted intentionally, knowingly, or negligently**

The HPS found, and we agree, that Mr. Ryan acted intentionally and knowingly. Mr. Ryan knowingly accepted a retainer fee from Mr. and Mrs. C. to represent their interests in the abuse and neglect case while he was simultaneously serving as the GAL. Further, Mr. Ryan appeared at the November 2014 hearing, acted as the GAL, and failed to inform the circuit court that he had accepted a retainer fee from Mr. and Mrs. C. The record is clear that Mr. Ryan acted intentionally and knowingly.

**3. The Amount of Real or Potential Injury**

Third, we examine the amount of real or potential injury. The ODC argues that "more Court proceedings were necessary to address the conflict of interest and [Mr. Ryan's] actions as the [GAL] delayed permanency for his clients." We agree. As this Court held in Syllabus Point 1, in part, of *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991), "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. **Unjustified procedural delays wreak havoc on a child's development, stability and security.**" (Emphasis added).

The record is clear that Mr. Ryan's actions delayed the resolution of the abuse and neglect matters. Because of the potential harm that such delays may cause to the well-being of the children awaiting permanency and stability, we agree that Mr. Ryan's actions most assuredly resulted in real or potential injury.

16

## 4. Aggravating or Mitigating Factors

We next consider whether any aggravating or mitigating factors are present. This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

The HPS found the following aggravating factors are present: (1) substantial experience in the practice of law; (2) a pattern of misconduct; (3) a failure to participate in the disciplinary proceedings; and (4) misconduct committed during the representation of minor children. We agree with the Board that these four aggravating factors are present.

First, substantial experience is deemed to be an aggravating factor, while lack of experience as a lawyer is considered to be a mitigating factor. This distinction is made in recognition of the fact that "a youthful and inexperienced attorney may have [engaged in misconduct] as a result of inexperience rather than as a result of deliberate calculation." *In re Brown*, 166 W.Va. 226, 235, 273 S.E.2d 567, 572 (1980). Mr. Ryan was admitted to the practice of law in West Virginia in 1988. Thus, Mr. Ryan had substantial experience as a lawyer, and the HPS correctly found this to be an aggravating factor.

Next, the record is clear that Mr. Ryan accepted a retainer fee from Mr. and Mrs. C., continued to serve in the abuse and neglect case as the GAL, misrepresented facts to the court regarding his visits with the children prior to the November 2014 hearing, and did not inform the circuit court of his conflict of interest until after Ms. Wright contacted

17

the ODC. In the *Standards for Imposing Lawyer Sanctions*, the American Bar Association has recognized a "pattern of misconduct" as an aggravating factor in a lawyer disciplinary proceeding. *See In re LeBlanc*, 713 So.2d 449 (La. 1998) (pattern of misconduct was aggravating factor causing lawyer's suspension). Additionally, this Court has found that a pattern of unethical behavior warrants an increased sanction. *See e.g.*, *Lawyer Disciplinary Bd. v. Rossi*, 234 W.Va. 675, 685, 769 S.E.2d 464, 474 (2015).[11]

Additionally, there is no dispute that Mr. Ryan failed to participate in the disciplinary proceedings despite numerous efforts by the ODC to contact him and provide him with an opportunity to respond to the charges. Finally, it is clear that his misconduct was committed while he was serving as GAL to two minor children. As described above, his representation of Mr. and Mrs. C. while serving as GAL was not only a conflict of interest, it caused delay in establishing permanency for the two children for whom he served as GAL. Therefore, we agree with the HPS that these two aggravating factors are present in this case.

We next consider whether any mitigating factors are present. We have previously held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be

[11] We also note that part of Mr. Ryan's pattern of misconduct includes the fact that he has had prior disciplinary offenses. According to the appendix-record, Mr. Ryan has been admonished by the LDB on four prior occasions. In these prior admonishments, the LDB determined that Mr. Ryan's misconduct included: (1) lack of diligence, (2) lack of adequate client communication, (3) failure to respond to requests for information from the ODC, and (4) failure to refund an advance payment of a fee that had not been earned upon termination of representation.

imposed." Syllabus Point 2, *Scott*, *supra*. In Syllabus Point 3 of *Scott*, we further explained:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

The HPS determined that no mitigating factors are present in this case. Based upon our review of the record, we agree that there is insufficient evidence to establish any mitigating factors that weigh in favor of leniency in this matter.[12]

When weighing all of the factors to be considered in imposing sanctions, we agree with the ODC that Mr. Ryan's law license should be annulled. We emphasize that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention." Syllabus Point 1, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365. According to the ODC, Mr. Ryan's actions in the underlying abuse and neglect proceedings delayed the permanent placement of the two children he was representing. This egregious conduct warrants a severe sanction.

---

[12] While Mr. Ryan stated that he was experiencing medical difficulties, he did not provide any documentation of his medical condition to the ODC or the HPS, despite the ODC's repeated requests.

19

Further, Mr. Ryan's consistent failure to respond to the ODC and to participate in the litigation in this matter also weighs in favor of a severe sanction. As this Court held in Syllabus Point 7 of *Lawyer Disciplinary Board v. Grafton*, 227 W.Va. 579, 712 S.E.2d 488 (2011):

> A person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee.

Thus, Mr. Ryan's failure to comply with this Court's order that he file a brief in this matter weighs heavily against him. *See Lawyer Disciplinary Bd. v. Grindo*, 231 W.Va. 365, 371, 745 S.E.2d 256, 262 (2013) ("[T]he fact that Mr. Grindo failed to respond to the deadlines and entreaties of this Court regarding the filing of briefs certainly weighs heavily against" him.).

Based on all of the foregoing, we find that the annulment of Mr. Ryan's law license is an appropriate sanction. Annulling Mr. Ryan's law license will accomplish the goals of our disciplinary system by punishing Mr. Ryan, restoring public confidence in the ethical standards of our profession, and serving as a deterrent to other members of the bar. *See Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. at 144, 451 S.E.2d at 445 ("Attorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect

the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice.").

## IV. CONCLUSION

Accordingly, for the reasons set forth above, Mr. Ryan's law license is annulled. In addition to annulling Mr. Ryan's law license, we impose the following sanctions: (1) Mr. Ryan must comply with the mandates of Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure regarding the duties of suspended or disbarred lawyers; (2) Mr. Ryan must produce a medical opinion from an independent medical examiner indicating that he is fit to engage in the practice of law prior to filing a petition for reinstatement pursuant to Rule 3.32; and (3) Mr. Ryan must pay the costs of this disciplinary proceeding.

Law License Annulled And Other Sanctions Imposed.