IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

**FILED**

**September 21, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0702

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

DAVID A. DOWNES, a member of
The West Virginia State Bar,
Respondent

Lawyer Disciplinary Proceeding
No. 14-06-542

SUSPENSION AND PROBATION WITH CONDITIONS

Submitted:  September 13, 2017
Filed:  September 21, 2017

Joanne M. Vella Kirby, Esq.
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Attorney for Petitioner

David A. Downes, Esq.
Front Royal, Virginia
Pro se Respondent

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "Pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, a final adjudication of professional misconduct in another jurisdiction conclusively establishes the fact of such misconduct for purposes of reciprocal disciplinary proceedings in this state." Syl. Pt. 1, *Lawyer Disciplinary Bd. v. Post*, 219 W.Va. 82, 631 S.E.2d 921 (2006).

2. "The provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure require the imposition of the identical sanction imposed by the foreign jurisdiction unless one of the four grounds provided for challenging the discipline imposed by a foreign jurisdiction is both asserted and established." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Post*, 219 W.Va. 82, 631 S.E.2d 921 (2006).

3. "Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure imposes an affirmative duty on a lawyer to report the fact that he has been publicly disciplined or has voluntarily surrendered his license to practice in a foreign jurisdiction." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Post*, 219 W.Va. 82, 631 S.E.2d 921 (2006).

4. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be

imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

5. Pursuant to Rule 3.20(b) of the West Virginia Rules of Lawyer Disciplinary Procedure, a member of The West Virginia State Bar, whether on active or inactive status, shall notify the Office of Disciplinary Counsel of any form of public discipline imposed by the authorities of another jurisdiction, or of the voluntary surrender of his or her license to practice law in connection with disciplinary proceedings in another jurisdiction. A member's failure to comply with this rule shall constitute an aggravating factor in a reciprocal disciplinary proceeding and may result in an increase in the sanction imposed by this Court.

**LOUGHRY, Chief Justice:**

This lawyer disciplinary proceeding was initiated pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure ("RLDP"), which directs this Court to impose reciprocal professional discipline when a member of The West Virginia State Bar is either sanctioned by a lawyer disciplinary authority in another jurisdiction or voluntarily surrenders his or her law license issued by another jurisdiction in connection with a disciplinary proceeding. On June 26, 2013, the Virginia State Bar Disciplinary Board issued a public reprimand with probationary terms to the respondent herein, attorney David A. Downes, for his negligent misappropriation of client funds and his failure to properly maintain a client trust account in violation of Virginia Rule of Professional Conduct 1.15. Furthermore, in connection with a lawyer disciplinary case initiated in the District of Columbia ("D.C.") based upon the same Virginia disciplinary matter, the respondent consented to the annulment of his D.C. law license effective September 25, 2014.

The facts surrounding the respondent's misconduct and sanction in Virginia, and the voluntary surrender of his law license in D.C., were undisputed during the reciprocal disciplinary hearing held by a Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board ("HPS"). In addition, the HPS found that the respondent failed to timely report both the Virginia and the D.C. matters to the West Virginia Office of Disciplinary Counsel ("ODC" or "West Virginia ODC") as required by RLDP 3.20(b). Upon

1

consideration of the record, the applicable law, and the arguments of the parties, we order that the respondent be suspended from the practice of law in West Virginia for thirty days. Upon completion of his suspension, the respondent shall be on probation with The West Virginia State Bar for eighteen months, during which time he shall submit to random reviews of his trust account records as described below. Finally, the respondent is ordered to pay the costs of the trust account reviews and the costs of this disciplinary proceeding.

## I. Factual and Procedural Background

The respondent was admitted to The West Virginia State Bar in 1988. As indicated above, he is also a member of the Virginia State Bar and, until the events set forth herein, was a member of the D.C. Bar. The respondent testified that he is presently a solo practitioner in Front Royal, Virginia, engaged primarily in criminal defense work. Because this is a reciprocal matter originating with lawyer discipline imposed by the Virginia State Bar Disciplinary Board, the HPS relied heavily upon the record created by the Virginia disciplinary authorities to ascertain the following undisputed facts.[1]

In 2006, the respondent represented a plaintiff, James Brown Sr., in a wrongful death suit pertaining to the death of Mr. Brown's minor son in a motor vehicle accident in

---

[1]Records obtained from the disciplinary authorities in Virginia and D.C. were admitted into evidence at the HPS hearing.

Virginia. The child was killed while riding in a car driven by his mother, the defendant/alleged tortfeasor Samantha Grady. In October 2006, the respondent received an insurance check for $15,000 in medical payments coverage made payable to himself and to both of the deceased child's parents, Mr. Brown and Ms. Grady. According to the respondent, he instructed his paralegal *not* to deposit the check because he did not represent the opposing party, Ms. Grady. Furthermore, he informed Mr. Brown that the check would be returned to the insurance company for correction. Nonetheless, on October 11, 2006, the $15,000 check was deposited into the respondent's fiduciary account at BB&T bank without any signatures for Mr. Brown or Ms. Grady. The respondent has testified that he was unaware a member of his staff had deposited the check in contradiction to his instructions and soon, thereafter, his representation of Mr. Brown ended.[2]

On May 7, 2007, the respondent closed his BB&T fiduciary account and deposited the funds therein, which presumably included the $15,000 medical payments benefits in the Brown case, into his law office operating account at Marathon Bank. On May 23, 2007, the respondent moved $44,816.66 from his operating account into his newly-opened IOLTA trust account at First Citizens Bank.

---

[2]Mr. Brown's case was taken over by a different law firm.

3

On September 22, 2008, attorney Steven M. Levine, who was counsel for Ms. Grady, wrote to the respondent inquiring about the medical payments check mailed almost two years earlier. Not receiving an immediate response, Mr. Levine wrote additional letters to the respondent on September 29, October 1, October 10, and October 17, 2008. The Virginia State Bar Disciplinary Board has found that upon receiving Mr. Levine's first letter, the respondent promptly conducted an investigation. The respondent's Quickbooks records did not reflect a deposit of $15,000 in the months of October or November 2006, and there were delays in obtaining records from BB&T regarding the closed fiduciary account. On October 21, 2008, BB&T provided the respondent with a copy of a deposit slip showing the $15,000 check had, in fact, been deposited into his account on October 11, 2006.

The respondent has testified that before receiving Mr. Levine's letters, he did not know there was a problem regarding the medical payments check. On October 21, 2007, which was the same day he received a copy of the deposit slip from BB&T, he wrote to Mr. Levine and offered to immediately pay the $15,000. The next day, October 22, 2008, the respondent delivered a $15,000 check to lawyer E. Eugene Gunter, counsel for the decedent child's estate.[3] The reimbursement check was written on the respondent's IOLTA trust account at First Citizens Bank.

---

[3]Mr. Gunter agreed to hold the medical payments money in trust until it could be determined who was entitled to a share.

4

Meanwhile, Mr. Levine filed an ethics complaint with the Virginia State Bar. During an April 22, 2010, interview conducted by a Virginia State Bar investigator, the respondent admitted he did not know whether his accountant had performed quarterly reconciliations of his fiduciary and law office operating accounts during the time period in question, and he did not personally review any reconciliations. Furthermore, the investigator noticed that the First Citizens IOLTA account had dropped below $15,000 on "numerous occasions" between May 2007 and August 2008. Ultimately, in or about April 2013, the Virginia Bar Counsel and the respondent stipulated to facts and to a violation of Rule 1.15 of the Virginia Rules of Professional Conduct. This rule requires a lawyer to, inter alia, hold a client's funds in an identifiable escrow bank account separate from the lawyer's own funds; promptly notify a client of the receipt of the client's funds; maintain complete records of all client funds; render appropriate accountings to the client; and promptly deliver funds to the client. *Id.* With regard to the record-keeping requirements, the rule requires the lawyer to maintain a journal listing all funds deposited into an escrow account, including the source and the date deposited; a subsidiary ledger containing a separate statement of account for each client; and records of reconciliations of the escrow account. *Id.*[4]

[4]Virginia Rule of Professional Conduct 1.15 bears many similarities to West Virginia Rule of Professional Conduct 1.15; both are based upon an American Bar Association model rule.

The respondent and Virginia Bar Counsel also stipulated to mitigating and aggravating factors to be considered for the purpose of ascertaining a sanction. The stipulated mitigating factors were that the respondent cooperated fully with the investigation; made prompt restitution; exhibited remorse; lacked any dishonest, selfish, or fraudulent motive; had no training or prior experience in accounting and bookkeeping; and took remedial measures during the ensuing six and one-half years including declining all personal injury cases and personally reconciling his bank accounts without further incident. The agreed-upon aggravating factors included the existence of a prior disciplinary record[5] and substantial experience in the practice of law. At an evidentiary hearing before the Virginia State Bar Disciplinary Board, the respondent presented witnesses attesting to his good character and skills as a lawyer, as well as the testimony of an accountant who explained the respondent's efforts to improve the record keeping in his office.

After considering the stipulations and evidence presented, by order entered June 26, 2013, the Virginia State Bar Disciplinary Board issued a "public reprimand with terms" to the respondent. The specified terms were probationary: he was prohibited from engaging in any further professional misconduct for a period of eighteen months; during the

_____

[5]The respondent's previous lawyer discipline includes a public reprimand in West Virginia for making a misrepresentation to a federal judge in 1992; a dismissal with terms, i.e., a review of his trust account records, in Virginia that arose from an ethics complaint filed in 1995 by opposing counsel in the respondent's own divorce case; and two private admonitions in Virginia.

6

eighteen-month period, he was required to submit to a minimum of four and a maximum of eight periodic, random reviews of his trust account records and reconciliations; and he was required to pay all costs of those reviews. The order warned that if the respondent failed to comply with these terms, he faced a suspension from the practice of law in Virginia. Finally, the respondent was ordered to pay the costs of the Virginia disciplinary proceeding.

Based upon the June 26, 2013, order of the Virginia State Bar Disciplinary Board, the D.C. Office of Bar Counsel opened a lawyer disciplinary complaint in that jurisdiction. On September 11, 2013, Joseph C. Perry, Assistant D.C. Bar Counsel, wrote to the respondent asserting that even in cases of negligent misappropriation of client funds, the District of Columbia Court of Appeals has specified that a period of suspension from the practice of law is the appropriate sanction to be imposed. The respondent answered this letter by arguing that application of the D.C. Bar's rules should result in the imposition of the same sanction as was imposed in Virginia. Subsequently, however, the respondent consented to be disbarred in D.C. instead of continuing to defend the disciplinary case. In an affidavit signed on August 27, 2014, the respondent acknowledged the truth of the material facts upon which the allegations rested; acknowledged that in accordance with D.C. case law, he had recklessly misappropriated funds entrusted to him in Mr. Brown's case; and admitted he could not successfully defend the allegations in D.C. Accepting the respondent's affidavit,

by order of September 25, 2014, the D.C. Court of Appeals disbarred the respondent from the practice of law in that jurisdiction.

On October 7, 2014, the D.C. Office of Bar Counsel forwarded a certified copy of the D.C. disbarment order to the West Virginia ODC. On October 29, 2014, Joanne M. Vella Kirby, West Virginia Lawyer Disciplinary Counsel, wrote the respondent inquiring whether he wished to consent to the annulment of his West Virginia law license pursuant to our rules of reciprocal discipline. *See* RLDP 3.20.[6] In a letter dated November 4, 2014, the

---

[6]RLDP 3.20, effective January 1, 1995, provides as follows:

> (a) A final adjudication in another jurisdiction, whether state or federal, of misconduct constituting grounds for discipline of a lawyer or a voluntary surrender of a license to practice in connection with a disciplinary proceeding shall, for the purposes of proceedings pursuant to these rules conclusively establish such conduct. Accordingly, a Hearing Panel Subcommittee may take action without conducting a formal hearing.
>
> (b) Any lawyer who is a member, active or inactive, of The West Virginia State Bar against whom any form of public discipline has been imposed by the authorities of another jurisdiction, whether state or federal, or who voluntarily surrenders his or her license to practice law in connection with disciplinary proceedings in another jurisdiction, whether state or federal, shall notify the Office of Disciplinary Counsel of such action in writing within ten days thereof. Failure to notify the Office of Disciplinary Counsel shall constitute an aggravating factor in any subsequent disciplinary proceeding.
>
> (c) Upon receiving notice that a lawyer who is a member, active or inactive, has been publicly disciplined or has voluntarily surrendered his or her license to practice law in

8

respondent informed the ODC that the D.C. matter was based entirely upon the Virginia misconduct and discipline. He set forth the history of his office's mishandling of the medical payments check, and he asserted that he only consented to disbarment in D.C. because he did not use that law license. He requested that as reciprocal discipline, this Court should impose the same sanction that was imposed in Virginia.

---

another jurisdiction, whether state or federal, Disciplinary Counsel shall, following an investigation pursuant to these rules, refer the matter to a Hearing Panel Subcommittee for appropriate action.

(d) If the lawyer intends to challenge the validity of the disciplinary order entered in the foreign jurisdiction with a disciplinary proceeding, the lawyer must request a formal hearing and file with the Office of Disciplinary Counsel a full copy of the record of the disciplinary proceedings which resulted in imposition of the disciplinary order or the voluntary surrender of a license to practice law.

(e) At the conclusion of proceedings brought under this section, the Hearing Panel Subcommittee shall refer the matter to the Supreme Court of Appeals with the recommendation that the same discipline be imposed as was imposed by the foreign jurisdiction unless it is determined by the Hearing Panel Subcommittee that (1) the procedure followed in the foreign jurisdiction did not comport with the requirements of due process of law; (2) the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Supreme Court of Appeals cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; (3) the imposition by the Supreme Court of Appeals of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals.

On July 21, 2015, the ODC moved the HPS to refer this matter to our Court with a recommendation that the respondent be publically reprimanded in West Virginia. Without holding a hearing, on October 26, 2015, the HPS filed a report recommending that we issue a public reprimand. None of the probationary terms imposed by the Virginia State Bar Disciplinary Board were included in the HPS's recommendation. Moreover, the HPS did not address why it declined to recommend the same disposition that occurred in D.C. After reviewing the HPS's October 26, 2015, report, this Court remanded the case for a hearing to determine whether the respondent's misconduct warranted the imposition of different professional discipline.

The HPS held an evidentiary hearing on July 22, 2016, where disciplinary counsel and the HPS members questioned the respondent about the events set forth above. The respondent acknowledged his responsibility for mishandling his trust account and the Brown medical payments check, as well as his violation of Virginia Rule of Professional Conduct 1.15. He testified, without any contradiction by the ODC, that he fully and successfully complied with the probationary terms imposed by the Virginia State Bar Disciplinary Board. Furthermore, the respondent explained that he only took Mr. Brown's case to preserve the statute of limitations, and not long after the check was deposited the case was transferred to a law firm more experienced in wrongful death cases. The respondent also testified that he was distracted during the relevant time period because the day after the check

10

was deposited, his twin children were born and one child suffered medical complications. Although he agreed to a voluntary disbarment in D.C., he explained that he did so in order to avoid litigating about a law license he no longer wished to maintain. According to the respondent's testimony, he had not handled a case in D.C. for several years and did not enjoy practicing law there. The respondent argued there was no indication the sanction in D.C. would have been disbarment if he had proceeded to litigate the case. Finally, the respondent explained his personal ties to West Virginia and expressed a desire to retain his law license in this State.

The only disputed factual issue at the HPS evidentiary hearing was whether the respondent complied with his duty pursuant to RLDP 3.20(b) to notify the West Virginia ODC, in writing, within ten days of the imposition of the Virginia sanctions.[7] During the hearing, the respondent claimed that he had provided timely notice back in 2013, but he did not have a copy of the notification and was unaware that notification was an issue in this case. However, the ODC checked its records and found no such notice. After hearing the evidence and considering proposed findings of fact and conclusions of law submitted by the

---

[7]The respondent acknowledged that he did not provide the ODC with timely notice of the surrender of his D.C. law license.

ODC,[8] the HPS found that the respondent did not timely report either the Virginia or the D.C. matters to the ODC.

The HPS filed a second report with this Court on January 17, 2017, this time urging a harsher sanction than it had previously recommended. The HPS now suggests that the respondent be suspended from the practice of law in West Virginia for a period of thirty days. In addition, consistent with the probationary terms imposed in Virginia, the HPS recommends that this Court require the respondent to undergo, over a period of eighteen months, a minimum of four and a maximum of eight periodic, random reviews by the West Virginia State Bar of his trust account records and reconciliations. Finally, the HPS recommends that the respondent pay all costs incurred for those reviews, as well as the costs of this disciplinary proceeding. To explain the increase in its recommended penalty, the HPS noted that it was previously unaware of the respondent's failure to report the two out-of-state disciplinary matters. Thereafter, the ODC filed a statement of no objection to the HPS's second report.

After reviewing the second report, we set this matter for briefing and oral argument. In its brief, the ODC argues in support of the recommendations in the HPS's

---

[8]Although he was given the opportunity to provide the HPS with proposed findings of fact, conclusions of law, and a recommended sanction, the respondent did not do so.

second report. The respondent, in a written summary response, requests that any review of his trust account records be limited to those of his West Virginia clients,[9] but he makes no other objection. The ODC presented oral argument on September 13, 2017,[10] and this matter is now ready for decision.

## II. Standard of Review

The respondent's professional misconduct in Virginia has already been conclusively proven. "Pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, a final adjudication of professional misconduct in another jurisdiction conclusively establishes the fact of such misconduct for purposes of reciprocal disciplinary proceedings in this state." Syl. Pt. 1, *Lawyer Disciplinary Bd. v. Post*, 219 W.Va. 82, 631 S.E.2d 921 (2006). However, with regard to any new evidence or issues addressed by the HPS, and on the question of the reciprocal sanction to impose, we apply the following standards:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful

---

[9]In his summary response dated June 1, 2017, the respondent "notes that he has declined all representations in West Virginia Courts since these proceedings were initiated in July of 2015 and does not currently have any clients involving West Virginia legal matters."

[10]The respondent waived his right to participate in the oral argument.

consideration to the [Subcommittee's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Subcommittee's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). While we respectfully consider the HPS's recommendations on the sanction, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). With these standards in mind, we address the issues before us.

## III.  Discussion

Pursuant to the Rules of Lawyer Disciplinary Procedure applicable to all members of The West Virginia State Bar, this Court will impose reciprocal professional discipline when a member receives "any form of public discipline . . . by the authorities of another jurisdiction" or "voluntarily surrenders his or her license to practice law in connection with disciplinary proceedings in another jurisdiction[.]" RLDP 3.20(b).[11] As set forth above, the adjudication of professional wrongdoing in another jurisdiction "conclusively establishes the fact of such misconduct for purposes of" a reciprocal

___

[11]*See supra* note 6.

14

proceeding in West Virginia. *Post*, 219 W.Va. at 82, 631 S.E.2d at 921, syl. pt. 1, in part (discussing RLDP 3.20). Moreover, in reciprocal disciplinary cases, the HPS's recommendations to this Court are limited to the following:

> At the conclusion of proceedings brought under this section, the Hearing Panel Subcommittee shall refer the matter to the Supreme Court of Appeals with the recommendation that the same discipline be imposed as was imposed by the foreign jurisdiction unless it is determined by the Hearing Panel Subcommittee that (1) the procedure followed in the foreign jurisdiction did not comport with the requirements of due process of law; (2) the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Supreme Court of Appeals cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; (3) the imposition by the Supreme Court of Appeals of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals.

R.L.D.P. 3.20(e). "The provisions of Rule 3.20 . . . require the imposition of the identical sanction imposed by the foreign jurisdiction unless one of the four grounds provided for challenging the discipline imposed by a foreign jurisdiction is both asserted and established." *Post*, 219 W.Va. at 83, 631 S.E.2d at 922, syl. pt. 4, in part.

In this case, the respondent received public discipline in Virginia and he voluntarily surrendered his law license in D.C. Pursuant to RLDP 3.20,[12] each of those

---

[12]*See supra* note 6.

15

events triggers the initiation of reciprocal disciplinary action in our State. However, in its second report, the HPS determined that under the specific facts and circumstances of this case, the appropriate reciprocal discipline to be imposed by this Court should be based upon the Virginia disposition, not the D.C. outcome. We agree. The respondent's voluntary disbarment in D.C., although a more severe outcome than in Virginia, was pursuant to a charge based entirely upon the conduct committed and penalized in Virginia. Moreover, there is no indication that D.C. authorities would have disbarred the respondent had the matter been litigated to a conclusion; rather, in his September 11, 2013, letter, the D.C. Bar Counsel advised the respondent he was facing a suspension for negligent misappropriation. The record is clear that the respondent voluntarily surrendered his D.C. law license because he saw no utility in undertaking the expense or effort toward maintaining that license. Accordingly, after considering the respondent's underlying misconduct and the reasons for the surrender of his D.C. law license, we are convinced the respondent's actions warrant a substantially different disposition than occurred in D.C. *See* RLDP 3.20(e)(4).

We next consider whether, pursuant to the provisions of RLDP 3.20 and *Post*, our reciprocal sanction should be identical to that imposed in Virginia. There are no challenges to the procedures followed, or to the quality and quantum of proof offered, in the Virginia disciplinary proceeding. There is also no claim that imposing the same discipline in West Virginia would result in a grave injustice. Moreover, the HPS concluded that the

misconduct in Virginia, by itself, would not warrant a substantially different type of discipline in this State. However, the HPS determined that the respondent committed related misconduct *in West Virginia* that constitutes an aggravating factor and thus warrants a substantially different sanction herein. Specifically, the HPS recommends a thirty-day suspension, instead of the public reprimand imposed by the Virginia State Bar Disciplinary Board, because the respondent failed to timely report both the Virginia and D.C. matters to the West Virginia ODC. Pursuant to RLDP 3.20(b), he was required to notify the ODC of each of those matters within ten days of issuance.[13] This rule "imposes an affirmative duty on a lawyer to report the fact that he has been publicly disciplined or has voluntarily surrendered his license to practice in a foreign jurisdiction." *Post*, 219 W.Va. at 82, 631 S.E.2d at 921, syl. pt. 2, in part.

The HPS's finding that the respondent failed to abide by the reporting requirement is supported by clear and convincing evidence. The record establishes that the ODC's knowledge originated from the D.C. Bar Counsel, not the respondent. The respondent even conceded that he failed to report the D.C. matter. However, during the HPS hearing the respondent claimed, for the first time, that he had provided the ODC with timely written notification of his Virginia sanction. The ODC has no record of any such report, and the respondent has never produced a copy of this alleged correspondence. Moreover, when

[13]*See supra* note 6.

17

responding to the ODC's inquiry in November of 2014, the respondent gave a detailed explanation of the Virginia disciplinary case without ever mentioning a prior notification. The tone of his November 4, 2014, letter suggests that the respondent was providing the information to the West Virginia authorities for the very first time. This letter was written approximately sixteen months beyond the ten-day mandatory reporting period. Finally, the respondent failed to dispute or even discuss this HPS finding in the summary response he filed with this Court.

The failure to disclose public discipline imposed in another jurisdiction, and the failure to disclose the voluntarily surrender of a law license in another jurisdiction in the face of a disciplinary proceeding, are extremely serious matters. The mandatory reporting requirement of RLDP 3.20(b) constitutes a fundamental tenant of the self-regulating legal profession. If the ODC, Lawyer Disciplinary Board, and ultimately this Court are not informed of such matters, we cannot act to protect the people of this State from potentially unethical treatment at the hands of lawyers already proven to have committed professional misconduct. The mandatory reporting requirement serves to prevent lawyers from sidestepping the disciplinary and remedial measures found necessary in other jurisdictions by moving their law practices to West Virginia.

18

Rule 3.20(b) directs that the failure to timely report "shall constitute an aggravating factor in any subsequent disciplinary proceeding." Aggravating factors "are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, in part, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). Other jurisdictions have also recognized that failing to comply with a reporting obligation is grounds for enhancing the sanction imposed in a reciprocal disciplinary action. For example, Texas lawyer disciplinary authorities imposed professional discipline upon a lawyer who was also licensed in Oklahoma; the lawyer failed to report the Texas discipline to the Oklahoma Bar Association and then failed to participate in the Oklahoma reciprocal proceeding. *See State ex rel. Oklahoma Bar Ass'n v. Knight*, 330 P.3d 1216 (Okla. 2014). The Supreme Court of Oklahoma observed that "additional discipline for [the lawyer's] misconduct is warranted by his failure to report and lack of respect for this Court's authority." *Id.* at 1220. Similarly, in *Office of Disciplinary Counsel v. Ross*, 689 N.E.2d 20 (Ohio 1998), an attorney licensed in Ohio failed to advise the Ohio Office of Disciplinary Counsel that he had received a reproval and a ninety-day suspension from the practice of law in California. Because of the lawyer's failure to abide by the mandatory reporting requirement, the Supreme Court of Ohio enhanced the reciprocal sanction to a six month suspension. *Id.* at 22.

To reinforce the importance of the mandatory reporting obligation, we now hold that pursuant to Rule 3.20(b) of the West Virginia Rules of Lawyer Disciplinary Procedure, a member of The West Virginia State Bar, whether on active or inactive status, shall notify the Office of Disciplinary Counsel of any form of public discipline imposed by the authorities of another jurisdiction, or of the voluntary surrender of his or her license to practice law in connection with disciplinary proceedings in another jurisdiction. A member's failure to comply with this rule shall constitute an aggravating factor in a reciprocal disciplinary proceeding and may result in an increase in the sanction imposed by this Court. In the case sub judice, the respondent's failure to timely report the Virginia public discipline and the D.C. voluntary disbarment to the West Virginia ODC constitutes an aggravating factor warranting the increase of his sanction to a thirty-day period of suspension from the practice of law in West Virginia, instead of a public reprimand as was issued in Virginia.

With regard to the probationary terms imposed by the Virginia State Bar Disciplinary Board, the parties have failed to establish any basis for deviating from that sanction. *See Post*, 219 W.Va. at 83, 631 S.E.2d at 922, syl. pt. 4 (requiring imposition of identical sanction imposed by foreign jurisdiction unless one of four specified grounds is established). An eighteen-month period of probation, to include periodic reviews of the respondent's trust accounts by the West Virginia State Bar or its designee, conducted at the

20

respondent's expense, is certainly warranted by the respondent's acts of misappropriation of client funds and mishandling of a client trust account.

Finally, we note that from the very beginning of this reciprocal matter, the respondent has sought for this Court to impose the same disciplinary terms that were ordered in Virginia. However, for the first time in his June 2017 summary response, the respondent requested that any review of his trust account records be limited to records pertaining to West Virginia clients only. We reject this eleventh-hour request. Not only has the respondent failed to prove any grounds to support this request, such a limitation would not serve to ensure the safekeeping of client funds. There is nothing in the record to indicate that the respondent maintains a separate trust account and records just for West Virginia clients, so to be accurate, any review would necessarily require an examination of *all* accounts and records.

### IV. Conclusion:

For the reasons set forth above, this Court orders the following:

1) The respondent shall be suspended from the practice of law in West Virginia for a period of thirty days;[14]

---

[14]With respect to any West Virginia clients or cases, the respondent is required to comply with the duties of a suspended lawyer set forth in RLDP Rule 3.28. Pursuant to RLDP 3.31, the respondent shall automatically be reinstated to the practice of law at the

2)    upon completion of his suspension, the respondent shall be placed on probation with The West Virginia State Bar for a period of eighteen months.  During the probationary period, the respondent is ordered to submit to a minimum of four and a maximum of eight periodic, random reviews of his trust account records and reconciliations by The West Virginia State Bar or its designee; and

3)  the respondent is ordered to pay all costs for the trust account reviews, and is ordered to pay the costs of this disciplinary proceeding.[15]

Suspension and Probation with Conditions.

---

conclusion of his suspension.

[15]*See* RLDP 3.15 (providing for payment of costs of disciplinary proceeding).

22