**FILED**

**June 10, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Walker, J., concurring:

I agree with our decision to reject the Hearing Panel Subcommittee's (HPS) recommendation and write separately to emphasize that this Court's authority in lawyer disciplinary matters is broad and that we established the West Virginia Office of Disciplinary Counsel to zealously prosecute attorney misconduct.[1]  Only after such prosecution can we efficiently perform our role as "the final arbiter of legal ethics problems and . . . make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."[2]

The ODC opened an ethics complaint against Respondent after he reported his felony convictions to it, as Rule 3.19 of the West Virginia Rules of Lawyer Disciplinary Procedure obligated him to do.  The West Virginia Lawyer Disciplinary Board issued a stay of the proceedings pending the resolution of Pennsylvania's disciplinary proceedings against Respondent for the same conduct and convictions.  After Pennsylvania adjudicated

---

[1] *See* W. Va. R. Law. Disciplinary P. 4.

[2] *LDB v. Lusk*, 212 W. Va. 456, 461, 574 S.E.2d 788, 793 (2002) (quoting Syl. Pt. 2, *LDB v. Barber*, 211 W. Va. 358, 566 S.E.2d 245 (2002)).

1

him for violating its rules of professional conduct, the ODC initiated reciprocal disciplinary procedures under Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure. Rule 3.20, among other things, recognizes the effect of another jurisdiction's professional misconduct adjudication, permits the HPS to "take action" on the conduct without a formal hearing, and requires the HPS recommend the same or, depending on the circumstances, "substantially different" sanctions than those imposed by the other jurisdiction.

Pennsylvania issued a private reprimand against Respondent, and the ODC pursued a public reprimand as reciprocal discipline because West Virginia recognizes no private lawyer discipline. Rule 3.20 required the HPS to determine whether Respondent's misconduct warranted the public reprimand, or any other sanction. But instead of making the required findings, it suggests that this Court lacks subject matter jurisdiction and recommends we dismiss the action.

The HPS concluded that it and "the West Virginia Supreme Court of Appeals are without subject-matter jurisdiction to hear this matter[,]" despite this Court refusing two of Respondent's prior motions to dismiss the reciprocal discipline action based on Respondent's same arguments about our jurisdiction.[3]  As a practical matter, this Court

---

[3]  We denied the motions by orders dated October 4, 2018, and January 28, 2021.

2

created the Hearing Panel and its subcommittees to "conduct hearings and make findings of fact, conclusions of law, and recommendations of lawyer discipline to the Supreme Court of Appeals . . . [,]"[4] but we possess "the exclusive authority to regulate and control the practice of law in this State."[5]  In other words, the HPS acts "as an administrative arm of this Court" but yields to our authority.[6]  So, I find it perplexing that the HPS effectively recommends we grant Respondent's motion to dismiss after we denied it twice.

Even so, the HPS supports its recommendation with flawed reasoning.  For one, the HPS found that "in the very first instance, the Respondent in this case was **not** required to report the private reprimand he received from Pennsylvania and ODC was not authorized to act because it had not received a notice of public discipline imposed by Pennsylvania against Respondent."[7]  But Respondent had a duty to report the outcome of

---

[4] W. Va. R. Law. Disciplinary P. 3.

[5] Syl. Pt. 1, in part, *Daily Gazette Co. Inc., v. Comm. on Legal Ethics*, 174 W. Va. 359, 326 S.E.2d 705 (1984).

[6] *See LDB v. Farber*, 200 W. Va. 185, 189, 488 S.E.2d 460, 464 (1997) (quoting *LDB v. Vieweg*, 194 W. Va. 554, 558, 461 S.E.2d 60, 64 (1995)).

[7] Emphasis in original.

Pennsylvania's proceedings because the ODC demanded that he do so.[8] While Rule 3.20(b) may not have required him to report the private discipline, ODC's demand obligated him to do so, and the HPS erroneously found that Respondent had no duty to report Pennsylvania's private reprimand. Likewise, the HPS's conclusion that ODC lacked authority under Rule 3.20 rests on its erroneous and unprecedented belief that Rule 3.20 (b) and (c) represent subject matter jurisdiction parameters. The HPS found that the subsections create "specific limitations" on jurisdiction but cited no authority supporting the proposition or showing that the ODC may not proceed under 3.20(a) and (e) absent reported public discipline. Instead, as the majority Opinion states, subsections (b) and (c) impose duties on West Virginia lawyers and the ODC regarding public discipline.[9] And

---

[8] The ODC stayed its proceedings on the criminal convictions to prevent Respondent from "defending himself in parallel disciplinary proceedings" and intended to use Pennsylvania's disciplinary adjudication to proceed under W. Va. R. Law. Disciplinary P. 3.20 after Respondent reported the outcome. The ODC sent him at least one letter demanding that he report the outcome of Pennsylvania's disciplinary proceedings.

[9] Subsection (b) provides that "[a]ny lawyer . . . against whom any form of public discipline has been imposed . . . *shall* notify the [ODC] . . . [,]" and subsection (c) provides that "[u]pon receiving [such] notice . . . Disciplinary Counsel *shall*, following an investigation pursuant to these rules, refer the matter to a Hearing Panel Subcommittee for appropriate action." (Emphasis added). *See also* Syl. Pt. 2, *LDB v. Post*, 219 W. Va. 82, 631 S.E.2d 921 (2006) ("Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure imposes an affirmative duty on a lawyer to report the fact that he has been publicly disciplined or has voluntarily surrendered his license to practice in a foreign jurisdiction.").

by imposing those duties, we did not limit the HPS's jurisdiction to decide matters brought under 3.20(a). As we have long-held, "'[j]urisdiction' relates to the power of a . . . board . . . to hear and determine a controversy presented to it . . . ."[10] Rule 3.20(a), which empowers the HPS to "take action," omits the word public when it says that "[a] final adjudication in another jurisdiction . . . of misconduct constituting *grounds for discipline* . . . shall, for purposes of proceeding pursuant to these rules conclusively establish such conduct."[11] As the HPS noted in its conclusions of law, "we are obligated not to add to [Rules] something [this Court] purposely omitted."[12] No other part of the Rule speaks to the HPS's power, and giving Rule 3.20(a) its plain meaning, any lawyer disciplinary adjudication in another jurisdiction giving rise to discipline—public or private— conclusively establishes the underlying conduct and empowers the HPS to take action on it.[13] So, if Rule 3.20 contains any subject matter jurisdiction trigger, an adjudication of

---

[10] Syl. Pt. 1, in part, *Fraga v. State Comp. Comm'n*, 125 W. Va. 107, 23 S.E.2d 641 (1942).

[11] W. Va. R. Law. Disciplinary P. 3.20(a).

[12] *See generally* Syl. Pt. 11, in part, *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013).

[13] Respondent also insists that the ODC lacked the authority under W. Va. R. Law. Disciplinary P. 4.4 because subsection (8) of the Rule authorizes the ODC to "seek reciprocal discipline when informed of any public discipline imposed in any other jurisdiction[.]" While the Rule grants the ODC the authority to seek reciprocal discipline based on reported public discipline, that does not limit the ODC's authority in other

5

attorney misconduct in another jurisdiction that constitutes grounds for *any* discipline satisfies it.

In this case, Pennsylvania adjudicated Respondent of violating Pennsylvania Rule of Disciplinary Enforcement 203(b)(1), the conduct underlying the violation being his criminal convictions of (1) aggravated assault by motor vehicle while driving under the influence, (2) driving under the influence of alcohol or controlled substance, (3) driving under the influence of alcohol, high rate of alcohol, (4) driving under the influence of alcohol or controlled substance, and (5) failure to keep right.[14] Rule 3.20(a) recognizes the existence of the convictions and authorized the HPS to proceed with or without a hearing. And it is the HPS's duty to consider, make findings related to, and recommend the appropriate sanctions for the misconduct when the ODC or the respondent attorney request different sanctions than those imposed the other jurisdiction: the HPS "shall refer the

---

respects. For instance, in subsection (4) of the Rule, we authorize the ODC to "prosecute violations of . . . the Rules of Professional Conduct[,]" which Respondent's criminal convictions—proven under 3.20(a)—violate. Also, W. Va. R. Law. Disciplinary P. 3.14 provides that "[i]t shall be a ground for discipline for a lawyer to . . . engage in conduct violating applicable rules of professional conduct on another jurisdiction[,]" as Pennsylvania sanctioned him for doing.

[14] Pennsylvania Rule of Disciplinary Enforcement 203(b)(1) provides that conviction of a crime shall be grounds for discipline.

6

matter to the Supreme Court of Appeals with the recommendation that the same discipline be imposed as was imposed by the foreign jurisdiction *unless* it is determined by the [HPS] that . . . (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals."[15]  In this instance, the ODC implicated subsection (e) by pursuing substantially different discipline in the form of a public reprimand under West Virginia Rule of Lawyer Disciplinary Procedure 3.15(7).[16]  The misconduct—the criminal convictions—warrants discipline different than the private reprimand issued by Pennsylvania because private reprimands violate the West Virginia Constitution.[17]  The ODC may also wish to "assert and establish" a substantially different sanction in this case because—according to Respondent—the Pennsylvania Office of Disciplinary Counsel only agreed to a private reprimand because they "faced possible embarrassment" if they had a hearing on the merits of the underlying misconduct:

> 30. . . . [b]ecause Pennsylvania's Office of Disciplinary Counsel was arguably derelict in its duty to prosecute the attorneys whose misconduct had contributed to the convictions

---

[15]  Rule 3.20(e) (emphasis added).

[16]  *See* Syl. Pt. 4, *Post*, 219 W. Va. 82, 631 S.E.2d 921 (Requiring an exception under subsection (e) to be "asserted and established" before HPS can recommend a different sanction than a foreign jurisdiction.).

[17]  *Daily Gazette Co. Inc.,* 174 W. Va. at 367, 326 S.E.2d at 713-14 ("private reprimands . . . as a method of official discipline is in direct contravention with the 'open courts' provision of West Virginia Constitution art. III, § 17.").

> that were the subject of Respondent's disciplinary proceedings, Pennsylvania's disciplinary counsel (as well as the attorneys who committed the misconduct during the underlying criminal proceedings) faced possible embarrassment during a public hearing before a Hearing Committee, where Respondent's full case for mitigation would have brought these actions to light.
>
> 31.   Accordingly, prior to the public hearing in Respondent's Pennsylvania disciplinary proceedings, Respondent and Pennsylvania's Office of Disciplinary Counsel agreed, in consultation with the Chair of the appointed Hearing Committee . . . to recommend that Respondent be issued a private reprimand . . . .[18]

Respondent seems to suggest that external pressures placed the Pennsylvania Office of Disciplinary counsel under duress, causing it to agree to a private reprimand. And following his logic, the HPS may determine that his misconduct warrants different sanctions in West Virginia since ODC faces no external pressures and can proceed with a public hearing. Aggravating factors may also constitute grounds for substantially different sanctions.[19] "Aggravating factors 'are any considerations or factors that may justify an increase in the degree of discipline to be imposed.'"[20] And we have reiterated that a lawyer's denial of responsibly for their misconduct can constitute an aggravating factor in

---

[18] Resp't's May 25, 2018, Mot. to Dismiss, 9, ¶¶ 30-31.

[19] *LDB v. Downes*, 239 W.Va. 671, 679-80, 805 S.E.2d 432, 440-41 (2017).

[20] *Id.* at 680, 805 S.E.2d at 441 (quoting Syl. Pt. 4, in part, *LDB v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003)).

8

disciplinary proceedings.[21] The ODC and the HPS should consider whether Respondent has taken responsibility for his actions since, among other things, he claims (1) the convictions underlying Pennsylvania's disciplinary adjudication resulted from prosecutorial misconduct,[22] (2) "the commencement of these . . . disciplinary proceedings, was precipitated by a form of 'bait-and-switch' fraud perpetrated by [ODC] . . . [,]"[23] (3) ODC counsel lacks "the basic minimal competence and ethical compass usually found in even first-year lawyers . . .[,]"[24] (4) ODC extorted him,[25] (5) "[t]he danger that [he] poses to the general public and legal profession . . . is so non-existent that [ODC] . . . proceeded to sit on its proverbial hands and do absolutely nothing . . . [,]"[26] (6) "the impairment evidence submitted by the Commonwealth at his [criminal] trial . . . had been manufactured

---

[21] *LDB v. Nace*, 232 W. Va. 661, 676, 753 S.E.2d 618, 633 (2013) ("Of the aggravating factors in this case, most notable is [the] refusal to accept any hint of responsibility . . . ."); *LDB v. Aleshire*, 230 W. Va. 70, 79, 736 S.E.2d 70, 76 (2012) ("We find it particularly troubling that [the lawyer] has refused to acknowledge the wrongful nature of his conduct.").

[22] Resp't's May 25, 2018, Mot. to Dismiss, 9, ¶¶ 30-31.

[23] Resp't's October 8, 2020, Mot. to Dismiss, 2, ¶ 3.

[24] *Id.* at 6, ¶ 15.

[25] *Id.* at 8, ¶ 19.

[26] *Id.* at 10, ¶ 27.

9

. . . [,]"[27] and (7) "if discipline is ultimately imposed upon [him], he may have grounds to petition the Supreme Court of the United States for review."[28]  Respondent challenges the validity of his convictions, the necessity of disciplinary proceedings against him, and casts blame on others despite Pennsylvania's disciplinary adjudication establishing several convictions arising from Respondent's drunk driving that inflicted serious bodily injuries upon an innocent person.[29]

Given the proven conduct, the HPS may choose to conduct a hearing or take action without one.  Either way, it should explain whether substantially different sanctions are warranted to achieve the goal of disciplinary proceedings in West Virginia which is to "appropriately punish the respondent attorney, . . . serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."[30]  Where the misconduct proven warrants a different sanction than

---

[27] *Id.* at 17, ¶ 50.

[28] *Id.* at 44, ¶ 138.

[29] *Commonwealth v. Doheny*, No. 28 WDA 2014, 2015 WL 7283340 at *1-3 (Pa. Super. Ct. April 9, 2015).

[30] Syl. Pt. 3, in part, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

another jurisdiction's sanction, it is the ODC's duty to pursue them and the HPS's duty to make findings explaining whether they are warranted.