# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Lawyer Disciplinary Board,**
**Petitioner**

**vs.)  No. 21-0590**

**James M. Pierson,**
**Respondent**


## MEMORANDUM DECISION

The Lawyer Disciplinary Board ("LDB") initiated this disciplinary proceeding against respondent, James M. Pierson ("Mr. Pierson").[1] The Office of Disciplinary Counsel ("ODC") and Mr. Pierson entered into joint stipulations of fact and conclusions of law, including specific violations of the Rules of Professional Conduct, before the Hearing Panel Subcommittee ("HPS") convened a hearing. Following the hearing the HPS recommended a ninety-day suspension of Mr. Pierson's law license, in addition to the following agreed-upon sanctions: (1) one year of supervised practice upon reinstatement; (2) completion of an additional nine Continuing Legal Education ("CLE") credits in law office management, with at least six of those specific to Interest on Lawyers' Trust Account ("IOLTA") management; (3) compliance with Rule 3.28 of the Rules of Lawyer Disciplinary Procedure; and (4) that Mr. Pierson pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure. Mr. Pierson objected to the HPS's recommendation; accordingly this Court scheduled this matter for briefing and oral argument.

This Court has now carefully considered the briefs, oral arguments, submitted record, and the pertinent authorities. Upon review, we find that the record supports the findings and recommendation of the HPS, and accordingly, impose the recommended sanctions as set forth below. Because there is no substantial question of law and no prejudicial error, a memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.[2]

---

[1] The LDB is represented by Rachael L. Fletcher Cipoletti, Esq., Chief Lawyer Disciplinary Counsel, and Andrea J. Hinerman, Esq., Senior Lawyer Disciplinary Counsel. Mr. Pierson is represented by Paul S. Saluja, Esq.

[2] *See, e.g., Law. Disciplinary Bd. v. Davis*, No. 20-0871, 2022 WL 421119 (W. Va. Feb. 11, 2022) (memorandum decision) (suspending attorney's license for six months and imposing other sanctions); *Law. Disciplinary Bd. v. Anderson*, No. 17-0896, 2019 WL 2176339 (W. Va. May 20, 2019) (memorandum decision) (same).

## I. Factual and Procedural History

Mr. Pierson was admitted to the West Virginia State Bar in 1985 and practices in Charleston, West Virginia. The instant disciplinary matter concerns Mr. Pierson's representation of a single client in both a divorce proceeding and a personal injury lawsuit. In December 2014 the client initially retained Mr. Pierson to represent her in a divorce, and during that representation she inquired whether he would also represent her in a personal injury matter stemming from a 2014 car accident. Thereafter, in February 2015, the client signed an authorization for Mr. Pierson to review the personal injury claim, which stated that if he agreed to represent her the two would enter into a separate retainer agreement. The client and Mr. Pierson both testified that they recalled signing such an agreement, but a copy of the agreement was not produced during these proceedings.[3]

The personal injury matter was resolved expeditiously; in July 2016 Mr. Pierson negotiated a $5,000.00 settlement with the other driver's insurer, State Farm. The client executed a release of State Farm and State Farm issued the settlement check, which Mr. Pierson then deposited into his Premier Bank IOLTA account. The personal injury file contains an unsigned settlement statement breaking down the intended disbursement of the settlement proceeds as follows: (1) $1,666.66 in attorney's fees to Pierson Legal Services; (2) $217.37 to Pierson Legal Services for advanced expenses; (4) $1,260.88 to Nationwide for its subrogation claim;[4] (4) $362.78 to the Centers for Medicare/Medicaid Services ("CMS") for its subrogation claim;[5] and (5) $1,492.31 to the client.

In both September and October 2016 CMS sent billing statements directly to the client seeking reimbursement for medical expenses it paid on her behalf in connection with the accident. The client delivered these billing statements to Pierson Legal Services in November 2016. However CMS was not reimbursed, resulting in CMS sending the client a letter in January 2017 notifying her that it intended to refer the debt to a collection agency, and that her government payments—including her Social Security disability income—may be garnished to cover the debt. Rather than risk this occurrence, the client paid CMS in February 2017 by personal check in the amount of $456.71.

In mid-2017, the client retained a different attorney, Shari Collias, Esq., to represent her in a bankruptcy proceeding. As part of this representation attorney Collias requested Mr. Pierson's files regarding the client's divorce and personal injury lawsuit. Upon review of the files, attorney Collias contacted another attorney to file a formal disciplinary complaint against Mr. Pierson for

---

[3] While Mr. Pierson stipulated to the absence of a proper written contingent fee agreement, the HPS apparently determined that charge was not proven, presumably due to the client's concession that she recalled signing such an agreement. We decline to disturb that finding; therefore, further discussion of this aspect of the proceedings is unnecessary.

[4] It is unclear how Mr. Pierson calculated this amount. In May 2016, before the settlement was finalized, Nationwide notified Mr. Pierson of its subrogation claim in the amount of $2,000.00. Nationwide later agreed to reduce its claim to $1,333.33, reflecting its pro rata share of Mr. Pierson's attorney's fees.

[5] Medicare Part B covered certain medical expenses at the time of the accident.

failing to execute a written contingent fee agreement in the personal injury lawsuit, and for failing to properly disburse the settlement funds for the subrogation claims.[6]

Mr. Pierson responded to the complaint,[7] indicating that the client "constant[ly] communicated" with his office and ran up a significant legal bill. He agreed that he "believe[d] that [his office] made errors with regard to the handling of the Nationswide [sic] subordination [sic] claim and the medicare [sic] claim[,]" but did not elaborate further at that time. In support of his response, Mr. Pierson indicated that he was attaching twelve exhibits, but no exhibits were produced until more than two years later.[8] Notably, upon examining those exhibits, the Investigative Panel of the LDB determined that, in addition to the allegations in the complaint, Mr. Pierson had also comingled personal funds in his IOLTA account by depositing $2,734.25 in "farm sale proceeds" into that account.

After reviewing the information set forth above, the LDB filed a formal statement of charges against Mr. Pierson on July 23, 2021, and scheduled a hearing before the HPS. Prior to the hearing, Mr. Pierson and ODC entered into agreed joint stipulations setting forth the above facts and Mr. Pierson's admitted violation of the following Rules of Professional Conduct: (1) Rule 1.5(c) for failing to execute a written contingent fee agreement in the personal injury suit;[9] (2) Rule 1.15(d) for failing to timely pay the subrogation claims; (3) Rule 1.15(a) for failing to safeguard funds and comingling personal funds with client funds in his IOLTA account[10]; and (4) Rules 1.15(b) and (f), and State Bar Administrative Rule 10 for failing to properly manage his IOLTA account.

On the day of the hearing Mr. Pierson tendered to the client a check reimbursing her for the amount she paid to CMS, plus interest. During the hearing, Mr. Pierson testified regarding his failure to promptly pay the Nationwide subrogation claim, explaining that he had originally issued a check from the IOLTA account to Nationwide in November 2016, but that he later discovered Nationwide never received that payment. When Nationwide notified him of this in March 2017, he issued a replacement check in the amount of $1,333.33 from his firm's general account. He did not advance a defense to failing to pay CMS at that time. Mr. Pierson also testified regarding the deposit of the farm sale proceedings into his IOLTA account, explaining that the deposit was

---

[6] The complaint also alleged that Mr. Pierson failed to pay the client her portion of the settlement proceeds, however, during the proceedings the client testified that her portion was returned to Mr. Pierson as payment of her outstanding legal fees.

[7] Shortly after filing his response, Mr. Pierson was administratively suspended from the practice of law on July 8, 2019, for failing to comply with mandatory CLE requirements. He was reinstated two days later.

[8] Similarly, after his October 2020 sworn statement, the LDB requested Mr. Pierson provide supplemental documents—the client's billing records—which he provided in late December 2020.

[9] *See supra* note 3.

[10] Mr. Pierson's personal funds (the "farm sale proceeds") were deposited in the IOLTA account, but immediately (within hours of the deposit) removed upon discovery of the mistake.

merely a technical mistake that was rectified immediately upon discovery. Mr. Pierson's testimony also established that he had four prior admonishments for violating Rule 1.4(a) and (b) (failing to properly communicate with a client), Rule 1.5(a) (charging an excessive fee), Rule 1.16(d) (failing to provide a client with their complete file), and Rule 8.1(b) (failing to promptly respond to ODC). Finally, he testified to experiencing medical issues which he believed to constitute mitigating factors in these proceedings, but later conceded that the medical issues did not occur during his representation of this client.

Thereafter, Mr. Pierson and ODC submitted proposed findings of fact, conclusions of law, and recommended sanctions to the HPS. In brief, their recommended sanctions were identical, save the recommended length of any imposed suspension of his law license. Mr. Pierson requested that the HPS impose a thirty-day suspension, while ODC requested the imposition of a two-year suspension.

Ultimately, the HPS concluded that Mr. Pierson violated Rules 1.15(a), (b), (d), and (f), as well as State Bar Administrative Rule 10. The HPS found that Mr. Pierson violated his duties to his client, the public, the legal system, and the legal profession, that he acted intentionally and knowingly in committing the violations of the rules, that the client suffered an actual injury as a result of his misconduct, and that there were several aggravating factors—and no mitigating factors—present during Mr. Pierson's representation of the client. Accordingly, the HPS concluded that a suspension was warranted and recommended that Mr. Pierson's license to practice law be suspended for ninety days, in addition to the imposition of the other agreed-upon sanctions. Mr. Pierson objected to the HPS recommendation, arguing that a ninety-day suspension would be excessive. In contrast, LDB urged this Court to increase the suspension to six months.

## II. Standard of Review

It is well-established that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). With respect to the HPS's findings:

> A *de novo* standard applies to a review of the adjudicatory record made before the [HPS] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994). With these standards in mind, we proceed to consider the HPS's recommendation as to Mr. Pierson's misconduct.

## III. Analysis

The question before this Court is the appropriate period of suspension of Mr. Pierson's

license to practice law. Mr. Pierson argues that his conduct was the result of inadvertence and the compounding of small errors, that the actual harm to his client was negligible, and that his cooperation in stipulating to the violations is a mitigating factor warranting either a lesser period of suspension or no suspension. In contrast, the LDB argues that the suspension should be increased to a period of six months, contending that a ninety-day suspension is inadequate in view of the seriousness of the violations. On review, we believe the HPS struck the proper balance in recommending a ninety-day suspension, and we therefore adopt the HPS's recommendation.

As stated, Mr. Pierson stipulated to the facts underlying this disciplinary proceeding and admitted to the violations of the Rules of Professional Conduct ultimately found by the HPS; accordingly, we turn our attention directly to the appropriateness of the HPS's recommended sanction. In that endeavor, this Court has explained that

> [i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. Pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987). In so doing, we are guided by the factors enumerated in Rule 3.16 of the Rules of Lawyer Disciplinary Procedure, as explained in the following holding:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Off. of Law. Disciplinary Couns. v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998). We consider each of the factors in turn.

The HPS found that Mr. Pierson knowingly violated duties owed to his client, to the public, to the legal system, and to the profession. Mr. Pierson concedes that he knowingly violated duties owed to this client in that he failed to properly administer the proceeds of the personal injury settlement. The HPS further found that the client suffered actual harm as the result of this failure. Moreover, the HPS also observed that Mr. Pierson violated his duties to the public, to the legal system, and to the legal profession insofar as lawyers "are officers of the court and must act in a manner to maintain the integrity of the Bar and the profession, and [Mr. Pierson's] admitted

conduct in this matter fell short" of those obligations. Syl. Pt. 2, in part, *Law. Disciplinary Bd. v. Ball*, 219 W. Va. 296, 633 S.E.2d 241 (2006) ("Lawyers who engage in the practice of law in West Virginia have a duty to know the Rules of Professional Conduct and to act in conformity therewith."). We agree with these findings and conclusions as to the first three *Jordan* factors.

The remaining factor for our consideration is the existence of any aggravating or mitigating factors. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Law. Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). The HPS found several aggravating factors to be present, including multiple violations of the rules during his representation of this client, that this client was a vulnerable client, and that Mr. Pierson exhibited a pattern of misconduct and indifference to making restitution. The HPS also found that Mr. Pierson had substantial experience in the practice of law and prior disciplinary offenses on his record.

We conclude that these HPS findings of aggravating factors are supported by the record, which demonstrates that Mr. Pierson admitted to a number of rule violations in this matter and that he had prior admonishments from the Investigative Panel of the LDB,[11] both of which indicate an overall pattern of misconduct. *See Law. Disciplinary Bd. v. Ryan*, 241 W. Va. 264, 273, 823 S.E.2d 702, 711 (2019) (explaining that the attorney exhibited a pattern of misconduct through multiple violations during a single representation and had four prior LDB admonishments for different conduct). Moreover, Mr. Pierson agreed that he knew this client was a fragile client when he undertook representation of her, and that he has more than forty years of experience in the practice of law. Finally, as discussed *supra*, there was delay in making restitution, which the HPS properly considered to be an aggravating factor. Accordingly, we defer to the HPS's findings regarding the existence of aggravating factors.

With respect to mitigating factors, this Court has explained that mitigating factors may include "full and free disclosure to [the] disciplinary board or cooperative attitude toward the proceedings." *Scott*, 213 W. Va. at 210, 579 S.E.2d at 551, syl. pt. 3, in part. Mr. Pierson urges this Court to consider that he entered into stipulations as to his violations of the Rules which is indicative of his cooperative attitude toward the proceedings. This Court has previously found that "by working toward stipulations of fact, violations, and factors considered in terms of sanctions, [an attorney] demonstrated a cooperative attitude toward the proceedings." *Law. Disciplinary Bd. v. Thompson*, 238 W. Va. 745, 758, 798 S.E.2d 871, 884 (2017). While we commend Mr. Pierson's cooperation in this regard, we also note the HPS afforded him no mitigation, observing that Mr. Pierson delayed in responding to ODC's requests for additional information. To the extent his conduct was mitigated by his entering into stipulations, this mitigating factor was tempered by those delays.

With respect to the appropriateness of the recommended sanction, Rule 3.15 of the Rules of Lawyer Disciplinary Procedure provides:

A [HPS] may recommend or the Supreme Court of Appeals

---

[11] *See Law. Disciplinary Bd. v. Sturm*, 237 W. Va. 115, 128, 785 S.E.2d 821, 834 (2016) ("[W]e have treated an Investigative Panel Admonishment to be aggravating just like any other disciplinary action.").

6

may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct . . .: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the [HPS] or the Court shall order the lawyer to reimburse the [LDB] for the costs of the disciplinary proceedings unless the panel or the Court finds the reimbursement will pose an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.

*Id*. In recommending a ninety-day suspension of Mr. Pierson's law license, the HPS was guided by this Court's prior cases as well as the ABA Model Standards for Imposing Lawyer Sanctions ("ABA Model Standards"). Standard 4.12 of the ABA Model Standards provides that "suspension is generally appropriate when a lawyer knows or should have known that he is dealing improperly with client property and causes injury . . . to a client[.]"

A review of our prior cases indicates that a ninety-day suspension is appropriate under these circumstances. We have imposed harsher sanctions for conduct which, although similar, was more egregious in that it involved misappropriation of client funds. *See, e.g., Law. Disciplinary Bd. v. Atkins*, 243 W. Va. 246, 842 S.E.2d 799 (2020) (imposing a nine-month suspension where the attorney failed to disburse settlement funds, held those funds in a non-IOLTA account, comingled funds, and misappropriated client funds). On the other hand, we have imposed lesser sanctions for conduct which, although similar, was more promptly rectified. *See, e.g., Law. Disciplinary Bd. v. Downes*, 239 W. Va. 671, 805 S.E.2d 432 (2017) (imposing a thirty-day suspension where the attorney mishandled client funds but promptly rectified the issue).

Upon review of this matter, we believe Mr. Pierson's conduct falls somewhere in the middle. He failed to properly manage settlement funds, as was the case in *Atkins*, but the amount of funds involved was not substantial, the actual injury was not extensive, and Mr. Pierson did not misappropriate any funds. He mishandled funds and rectified the issue, as was the case in *Downes*, but did not rectify the issue promptly. Ultimately, upon consideration of all the circumstances of this case, we are persuaded that the ninety-day suspension recommended by HPS strikes the appropriate balance.

## IV. Conclusion

For the reasons stated above, we adopt the recommendation of the HPS and order that Mr. Pierson's law license be suspended for a period of ninety days, and that upon his reinstatement he be placed on one year of supervised practice by an active attorney in his geographic area in good standing with the West Virginia State Bar and agreed upon by ODC. We also order that Mr. Pierson be required to complete an additional nine hours of continuing legal education in the area of law office management, including at least six hours in IOLTA management prior to reinstatement; that he comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure; and that he pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law license suspended and other sanctions imposed.


**ISSUED**: November 8, 2023


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn